CYNTHIA PAGANELIS, Conservator of the Estate of Bennie L. Johnson, a Disabled Person, Appellant, v. THE INDUSTRIAL COMMISSION et al. (International Union of Operating Engineers Local 150, 150A, 150B, and 150C, Appellee).

First District (Industrial Commission Division)   No. 1—87—3240WC

Opinion filed August 17, 1988.—Modified on denial of rehearing October 26, 1988.

Wiedner & McAuliffe, Ltd., of Chicago (Frank J. Wiedner and Richard J. Leamy, Jr., of counsel), for appellant.

Braun, Lynch, Smith & Strobel, Ltd., of Chicago (Thomas P. Smith, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Cynthia Paganelis, filed an application for adjustment of claim under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) on behalf of her father, Bennie L. Johnson, for injuries he sustained in a January 29, 1983, automobile accident. The arbitrator awarded Bennie medical expenses and permanent total disability. The Industrial Commission, in a split decision, reversed the finding of the arbitrator and denied compensation. The circuit court confirmed the decision of the Commission. The petitioner brings this appeal.

The nature and extent of Bennie's injuries are not disputed. Bennie suffered severe head and brain injuries from the accident rendering him permanently and totally disabled.

At a hearing before the arbitrator, William Dugan was called on behalf of the petitioner. Dugan testified that on the date of the accident, he worked as a business representative for the respondent. Dugan stated that Bennie also worked for the respondent as a business representative. According to Dugan, the respondent supplied Bennie with an automobile equipped with a telephone.

Dugan testified that on January 29, 1983, he had a telephone conversation with Bennie at 5:45 p.m. The conversation concerned union business. Dugan asked Bennie to meet with him later that evening. Bennie replied: "I will call you when I leave here." Bennie did not specify where he was calling from. That was the last conversation Dugan had with Bennie.

The petitioner testified that at the hospital on the morning after the accident, Dr. Robert Gamble told her that he had found a high alcohol content in Bennie's blood. According to the petitioner, Bennie had had a drinking problem, but he had stopped heavy drinking a year and a half prior to the accident. She did, however, recently see Bennie drink a small amount of wine with dinner.

The parties stipulated that witnesses from E & E Hauling would testify that: (1) they met with Bennie in Bloomingdale, Illinois, from 2:30 p.m. until 5:15 p.m. on the day in question to discuss employee grievances; and (2) Bennie consumed no alcohol at any time during the meeting.

The petitioner introduced into evidence the Schaumburg, Illinois, police department accident report. The report indicated that Bennie was involved in an intersection accident in Schaumburg at approximately 6:16 p.m.

The respondent introduced into evidence Bennie's medical records from Northwest Community Hospital where he was taken after the ac-

cident. The respondent also introduced the deposition of Dr. Laskowski into evidence. At the deposition, Dr. Laskowski testified that he was the emergency room physician on duty on the date in question. The doctor stated that he had ordered a blood-alcohol test because of Bennie's depressed mental status and because the paramedics had told him that Bennie had been drinking. The arbitrator sustained the petitioner's hearsay objection to the paramedics' statement to the doctor. Dr. Laskowski stated that he did not administer the test. According to the doctor, the test results showed that Bennie's blood-alcohol level was .238. Dr. Laskowski further testified that the blood-alcohol testing procedures were reliable; that a person with a blood-alcohol content of .238 would have impaired coordination, reflexes and judgment; and that a person's driving would be impaired with a .238 blood-alcohol level.

The respondent also introduced into evidence the deposition of Dr. Donal O'Sullivan. The doctor stated that he was board-certified in general internal medicine, pathology and oncology. Dr. O'Sullivan stated that he had reviewed the hospital medical records and Dr. Laskowski's deposition. The doctor testified that based on the record, Bennie's blood-alcohol level at the hospital was .238. The doctor opined that an ordinary person with a .238 blood-alcohol level would be noticeably under the influence of alcohol, that his judgment and coordination would be impaired, and that his ability to drive an automobile would be significantly impaired.

Dr. O'Sullivan went on to testify that the instant blood-alcohol testing procedures were highly automated and thus minimally subject to human error. The doctor stated that he found no evidence that Bennie's blood specimen could have been mixed up with another, while admitting that he had no personal knowledge of the protocol or procedures used at the hospital.

The arbitrator found that the petitioner established that Bennie had suffered serious and permanent injuries arising out of and in the course of his employment. The arbitrator further found that the expert testimony failed to establish the respondent's defense that as a matter of law Bennie was so intoxicated that the accident arose because of his alleged intoxicated condition rather than out of his employment. The arbitrator awarded Bennie permanent total disability of $446.40 per week for life and $47,883.68 for medical expenses.

The respondent filed for review by the Commission. The medical expenses incurred since the arbitrator's decision were the only additional evidence presented by the petitioner to the Commission. The respondent submitted no additional evidence. The Commission reversed

the ruling and award of the arbitrator.

The decision of arbitrator Perry Gulbrandsen in part is as follows:

"The Arbitrator makes the following finding on the issue of whether an accident occurred which arose out of and in the course of Petitioner's employment by Respondent: The Petitioner established that he sustained serious and permanent injuries arising out of and in the course of his employment. The case of *District 141 International Association of Machinists and Aerospace Workers vs. the Industrial Commission,* 79 Ill. 2d 544, 404 N.E.2d 787 (1980) is particularly enlightening. (District 141 International Association). In that case, the Court held that in order for compensation to be denied on the basis that the employee was intoxicated, the employee must be so intoxicated that as shown by the evidence the Court can say as a matter of law that the injury arose out of his drunken condition and not out of his employment. Whenever an employee is so drunk and helpless that he can no longer follow his employment, he cannot be said to be engaged in that employment. The Court goes on to say, however:

'that intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat recovery of compensation although the intoxication may be a contributing cause to his injury.'

The expert testimony did not establish that the Petitioner was so intoxicated that as a matter of law the accident arose out of an alleged intoxicated condition rather than out of his employment. Accordingly, the Respondent's defense is not sufficient."

Commissioner Ralph Miller, Jr., wrote the majority decision and opinion on review. Though Commissioner Douglas agreed with the result, he did not participate in the written decision of Commissioner Miller prior to his, Commissioner Douglas', departure from the Commission. Commissioner Bachman signed the decision of Commissioner Miller in order that the same could issue while indicating that he was not a member of the panel and did not participate in the agreement reached by the majority. Commissioner Bachman indicated that he did so under the authority of *Zeigler v. Industrial Comm'n* (1972), 51 Ill. 2d 137, 281 N.E.2d 345. The rationale of Commissioner Miller's opinion can be gleaned from paragraph No. 5 thereof:

"5. The Commission notes that this case is clearly distinguishable from those which have been the basis for existing Supreme Court decisions which have affirmed compensability in earlier cases of probable intoxication. It is distinguishable not only on

terms of the probable public interest shift in recent years in the attitudes towards excessive consumption of alcoholic beverages in general, and towards driving while intoxicated, in particular, and the fact that in this case the claimant in interest is not an 'innocent' surviving widow or child; but of more importance, it is distinguishable since it is not one in which there is any evidence whatsoever that the employee had, in fact, been performing his job in an apparently acceptable manner *after* the consumption of the alcoholic beverages before the accident."

Commissioner Ted Black, Jr.'s, dissenting opinion is as follows:

"I respectfully dissent from the Decision of the majority and would affirm and adopt the Arbitrator's finding that as the result of accidental injuries arising out of and in the course of his employment on January 29, 1983, the Employee is permanently and totally disabled under §8(f) of the Workers' Compensation Act and is entitled to $47,883.68 for reasonable and necessary medical expenses. The Arbitrator heard all the testimony, considered all the evidence and made findings (attached) which are supported by evidence in the record. I would further find that Petitioner is entitled to an additional $28,682.10 for reasonable and necessary medical expenses presented on Review."

The circuit court confirmed the decision of the Commission. The petitioner appeals.

The sole issue on appeal is whether the Industrial Commission's finding, that the petitioner failed to prove that Bennie Johnson's injuries arose out of and in the course of his employment, was against the manifest weight of the evidence.

The petitioner initially argues that the Commission could not consider as substantive evidence the hospital medical records which stated that Bennie's blood-alcohol level following the accident was .238. The petitioner contends that there is no foundation as to the reliability of the blood-alcohol test procedure or as to the chain of custody.

Section 16 of the Act provides in pertinent part the following:

"The records kept by a hospital, certified to as true and correct by the superintendent or other officer in charge, showing the medical and surgical treatment given an injured employee in such hospital, shall be admissible without any further proof as evidence of the medical and surgical matters stated therein, but shall not be conclusive proof of such matters." Ill. Rev. Stat. 1985, ch. 48, par. 138.16.

From section 16, it is clear that the respondent could properly introduce into evidence the hospital records which indicated Bennie's

blood-alcohol level. However, it is also clear from section 16 that the hospital record was not to be considered conclusive proof of intoxication but was only one factor for the Commission to consider.

■ In order for compensation to be denied on the basis that an employee was intoxicated, the evidence must show that the employee was so intoxicated that, as a matter of law, the injury arose out of the employee's drunken condition and not his employment. (*District 141, International Association of Machinists & Aerospace Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544, 404 N.E.2d 787.) When an employee is so drunk and helpless that he can no longer follow his employment, he cannot be said to be engaged in his employment, and when an employee is injured in that condition his injury does not arise out of his employment. However, intoxication that does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation. *District 141*, 79 Ill. 2d at 558.

Also we think worthy of note *Freeman United Coal Mining Co. v. Industrial Comm'n* (1987), 160 Ill. App. 3d 524, 513 N.E.2d 555. In *Freeman* the decedent was employed by Freeman Coal as a night watchman on the 3 p.m. to 11 p.m. shift. On December 24, 1980, the decedent's relief watch arrived at 11 p.m. and saw the decedent drive away, noticing nothing unusual about his driving. The relief watch found the decedent six hours later lying on the ground just inside the gate of the employer's property. The relief watch observed that the decedent's truck was stopped outside the gate, with the engine running and the headlights on. The relief watch testified that the ground on which the decedent was lying was rough, snowy, icy, unlit and had a small incline. He also testified that the temperature that night was about 9° below zero. The watchman stated that he found a small amount of liquor in a bottle in the office where the decedent had been working. The medical evidence indicated that death was due to exposure. However, the medical evidence revealed that the decedent had a blood-alcohol level of .155 and a urine alcohol level of .306. The Commission awarded benefits to the decedent, finding that his injuries arose out of and in the course of his employment.

This court affirmed the decision of the Commission on appeal. We noted that there was no evidence as to the effect that the alcohol had on the decedent's job performance, including either eyewitness or medical expert testimony. From this, we found that the evidence was insufficient to support a determination that the decedent was so intoxicated that he could not perform his duties.

■ *Freeman Coal* is analogous to the case at hand. Here, there is absolutely no evidence of how the accident happened and no evidence

of any other physical impairment other than the hospital record showing blood-alcohol content. Both Doctors Laskowski and O'Sullivan admitted the possibility of at least some percentage error in the blood-alcohol results, however. Most importantly, the respondent's evidence failed to show that the petitioner's ability to drive was in any way impaired at the time of the accident. The evidence is that Bennie did not drink during the course of the afternoon, but that it was possible or likely that he drank some form of alcohol during the hour prior to the accident, and that it was possible that intoxication may have contributed to the accident. It is unquestioned that the petitioner's evidence showed that when the accident occurred Bennie was driving to meet with another union official to discuss union business.

It is axiomatic that the Industrial Commission has original jurisdiction to review evidence taken before the arbitrator and to consider the evidence properly presented to it. Such a review is neither a trial *de novo* nor simply a review of the record but is *sui generis*. (*National Biscuit, Inc. v. Industrial Comm'n* (1984), 129 Ill. App. 3d 118, 472 N.E.2d 91.) We will not reverse the Commission's decision denying compensation unless it is against the manifest weight of the evidence. *Glover v. Industrial Comm'n* (1985), 140 Ill. App. 3d 361, 485 N.E.2d 605.

We find that the respondent failed to prove that Bennie was so intoxicated that the Commission could find as a matter of law that his injuries arose out of his drunken condition. We further find that the petitioner presented sufficient evidence that Bennie's injuries arose out of and in the course of his employment. Therefore, the Commission's finding that the petitioner failed to prove that Bennie's injuries arose out of and in the course of his employment was against the manifest weight of the evidence.

Accordingly, we reverse the finding and denial of compensation by the Commission and reinstate the award of the arbitrator. However, we remand this cause to the Commission for further consideration of the petitioner's additional medical expenses incurred between the issuance of the arbitrator's decision and the instant Commission hearing.

Judgment reversed; arbitrator's decision reinstated; cause remanded to the Commission for determination and award of additional medical expenses due.

Judgment reversed; arbitrator's decision reinstated; and cause remanded.

McNAMARA, WOODWARD, McCULLOUGH, and CALVO, JJ., concur.