(No. 67975.—

CYNTHIA PAGANELIS, Conservator of the Estate of Bennie Johnson, a Disabled Person, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (International Union of Operating Engineers, Locals 150, 150A, 150B, and 150C, Appellant).

*Opinion filed December 21, 1989.*

470

CALVO, J., took no part.
RYAN, J., concurring.

Braun, Lynch, Smith & Strobel, Ltd., of Chicago (Thomas P. Smith, of counsel), for appellant.

Frank J. Wiedner and Richard J. Leamy, Jr., of Wiedner & McAuliffe, Ltd., of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Claimant, Cynthia Paganelis, as conservator of the estate of Bennie L. Johnson, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, pars. 138.1 through 138.30), seeking compensation for accidental injuries allegedly sustained by Johnson while an employee of the respondent, the International Union of Operating Engineers, Locals 150, 150A, 150B, and 150C. Following a hearing,

the arbitrator allowed the claim, finding that Johnson was permanently and totally disabled as a result of injuries arising out of and in the course of his employment. On review, the Industrial Commission denied compensation, ruling that the injuries did not arise out of and in the course of Johnson's employment. The circuit court of Cook County confirmed the Commission's decision. The appellate court, Industrial Commission division, reversed the judgment of the circuit court and reinstated the arbitrator's decision awarding compensation. (174 Ill. App. 3d 992.) The appellate court certified the cause for further review, and we allowed the respondent's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The employee, Bennie L. Johnson, was severely injured on January 29, 1983, in an automobile accident in Schaumburg. According to the police report, Johnson was making a left turn from Route 72 onto Plum Grove Road when his car was struck on the passenger side by an oncoming vehicle. The accident occurred at 6:16 in the evening; it was raining, and the pavement was wet. The intersection was controlled by stop lights, but there is no evidence in the record indicating which lanes of traffic had the right-of-way. Neither Johnson nor the driver of the other car was ticketed. The police report indicated that Johnson's consumption of alcohol was undetermined but that there was no evidence that the other driver had been drinking.

Johnson was the only occupant of his vehicle, and he was taken immediately to Northwest Community Hospital, in Schaumburg. There, a test revealed Johnson's blood-alcohol level to be .238%, and various reports made in the course of his medical care noted his apparent intoxication. Johnson remained in a coma for almost two weeks. Following his release from the hospital on March 1, 1983, Johnson underwent treatment at a number of rehabilitation centers for disabilities resulting

from the severe head injuries he suffered in the accident. There is no dispute that Johnson is permanently and totally disabled as a consequence of his injuries.

Johnson was 52 years old at the time of the accident, was unmarried, and did not have any dependent children. He was employed as a business agent in the Waukegan office of the International Union of Operating Engineers, Locals 150, 150A, 150B, and 150C. The job entailed extensive traveling, and each agent was provided with a car and car telephone. The union also maintained a separate telephone line at each agent's residence for use in connection with union business. The agents were on call at all hours, and they frequently worked on weekends and at night.

At the hearing conducted before the arbitrator, the parties presented evidence concerning Johnson's activities on the day of the accident. Union business agents Bill Rucker and William Dugan testified that shortly before noon on January 29, 1983, a Saturday, they called Johnson at the union office in Waukegan to enlist his aid in resolving a union member's employment grievance. Johnson agreed to help; he was familiar with the employer, E&E Hauling, Inc., and was acquainted with one of its executives.

According to the parties' stipulation of evidence, Johnson met with a representative of E&E Hauling that afternoon from 2:30 to 5:15 at the company's office in Bloomingdale. During that time Johnson also spoke with the company's president by telephone. The parties stipulated that the company's representative would testify that in the course of the meeting Johnson "had nothing of an alcoholic nature to drink." The witness did not see Johnson following the conclusion of the meeting at 5:15.

William Dugan testified that Johnson called him at home around 5:45 that evening on the union telephone line. According to Dugan, Johnson explained that he had

had a "row with our buddy," asked Dugan to meet him at 7 o'clock, and said, "I will call you when I leave here." Johnson did not say where he was or identify "our buddy." Johnson did not call back later, and Dugan learned of the accident at 6:30 that evening, when another union business agent telephoned him with the news.

Johnson's conservator and daughter, Cynthia Paganelis, testified concerning the nature and extent of Johnson's injuries and introduced evidence of his medical expenses. On cross-examination Mrs. Paganelis was asked about her father's drinking habits. She said that following the accident one of the hospital physicians mentioned that a high level of alcohol had been found in Johnson's system and asked her whether the staff should be on the alert for symptoms of alcohol withdrawal. Paganelis testified that she told the doctor that Johnson "was not drinking in a year and a half." At the hearing, Paganelis explained that her father previously had had a drinking problem. She stated that in October 1981 her father told her that he was going to stop drinking because he had been experiencing irregular heartbeats and his doctor had advised him to quit. Paganelis testified that Johnson "had wine with dinner. He didn't finish it, the whole glass of wine, he wouldn't finish it." She acknowledged that she did not know what her father did outside her presence.

At the hearing before the arbitrator the respondent introduced into evidence Johnson's medical records from Northwest Community Hospital. The respondent also presented the evidence depositions of Dr. Chester Laskowski, the emergency room physician who treated Johnson, and Dr. Donal O'Sullivan, whom the respondent had retained as an expert witness. Dr. Laskowski, in his deposition, explained that he had ordered a blood-alcohol test because Johnson's mental state was depressed at

the time of his admission to the hospital. Dr. Laskowski did not himself draw the blood sample for the test or perform the laboratory work. He later learned that the test showed that Johnson had a blood-alcohol level of .238%, which, he said, would indicate moderate to severe intoxication. Dr. Laskowski stated that Johnson would have had difficulty driving. Dr. Laskowski attested to the accuracy of the type of machine that was used to determine Johnson's blood-alcohol concentration. The claimant objected to Dr. Laskowski's testimony concerning Johnson's blood-alcohol level and the effects of such a degree of intoxication.

The respondent also presented the evidence deposition of its expert witness, Dr. O'Sullivan. From a review of Johnson's medical records and of Dr. Laskowski's evidence deposition, Dr. O'Sullivan concluded that Johnson had a blood-alcohol concentration of .238% at the time of his hospitalization following the accident. Dr. O'Sullivan acknowledged that the precise effects of such a level on a 52-year-old male would depend on the person's habits, his previous experience with alcohol, and the condition of his organs, particularly his liver. Dr. O'Sullivan stated, however, that an ordinary person would be noticeably intoxicated with a blood-alcohol level of that amount and that his coordination would be impaired and his judgment clouded. Dr. O'Sullivan also said that such a person would be driving in an erratic manner and would not be able to properly control his vehicle. Dr. O'Sullivan described the operation of the type of machine used in the present case to determine Johnson's blood-alcohol level and said that the entire procedure is automatic. Dr. O'Sullivan also stated that the test results would not be significantly affected if an alcohol swab or alcohol-soaked needle were used in drawing the patient's blood sample. He explained that the presence of isopropyl alcohol, the variety of alcohol used on swabs and for other medical

purposes, would not influence the machine's measurement of ethyl alcohol, the variety found in beverages. According to Dr. O'Sullivan, alcohol-soaked needles are not in current use in the Chicago area. As in the case of Dr. Laskowski, the claimant objected to Dr. O'Sullivan's testimony regarding Johnson's blood-alcohol level and the physiological effects of that degree of intoxication.

At the conclusion of the hearing, the arbitrator took the matter under advisement. In a written decision filed April 10, 1985, the arbitrator found that Johnson's accident arose out of and in the course of his employment. The arbitrator also concluded that the respondent had failed to establish its defense that Johnson's accident arose as a matter of law from his intoxication rather than from his employment. The arbitrator accepted the parties' stipulation that Johnson was permanently and totally disabled and awarded him $446.40 a week for life for his complete disability, as provided by section 8(f) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(f)). The arbitrator also awarded Johnson $47,883.68 in reasonable and necessary medical expenses, as provided by section 8(a) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a)). The arbitrator sustained the claimant's objections to the opinion testimony of Dr. Laskowski and Dr. O'Sullivan regarding the physiological effects of a blood-alcohol level of .238%.

On review before the Industrial Commission, the parties did not present any further evidence apart from the claimant's submission of documentation of certain additional medical expenses. The Commission denied compensation, finding that Johnson's accident did not arise out of and in the course of his employment. In its written decision the Industrial Commission stated:

"The Commission notes that this case is clearly distinguishable from those which have been the basis for existing Supreme Court decisions which have affirmed com-

pensability in earlier cases of probable intoxication. It is distinguishable not only on terms of the probable public interest shift in recent years in the attitudes towards excessive consumption of alcoholic beverages in general, and towards driving while intoxicated, in particular, and the fact that in this case the claimant in interest is not an 'innocent' surviving widow or child; but of more importance, it is distinguishable since it is not one in which there is any evidence whatsoever that the employee had, in fact, been performing his job in an apparently acceptable manner *after* the consumption of the alcoholic beverages before the accident." (Emphasis in original.)

The Commission concluded that the claimant failed to prove that the employee's injuries arose out of and in the course of his employment. One Commission member dissented, stating that he would adopt the decision of the arbitrator allowing compensation.

On judicial review, the circuit court of Cook County confirmed the Industrial Commission's decision. In a written order, the circuit judge stated that conflicting inferences could be drawn from the record in the case and that the Commission's decision was not against the manifest weight of the evidence. The court also ruled that the opinion testimony of Dr. Laskowski and Dr. O'Sullivan regarding the information contained in the hospital records was admissible.

The appellate court, Industrial Commission division, reinstated the arbitrator's decision awarding compensation. (174 Ill. App. 3d 992.) The court ruled that the opinion testimony of the two physicians was proper. The appellate court concluded, however, that the employee was not so intoxicated that he was incapable of performing his work. The court stated:

"We find that the respondent failed to prove that Bennie was so intoxicated that the Commission could find as a matter of law that his injuries arose out of his drunken condition. We further find that the petitioner presented

sufficient evidence that Bennie's injuries arose out of and in the course of his employment. Therefore, the Commission finding that the petitioner failed to prove that Bennie's injuries arose out of and in the course of his employment was against the manifest weight of the evidence." (174 Ill. App. 3d at 998.)

The appellate court remanded the cause to the Commission for consideration of the claimant's evidence of additional medical expenses accruing after the initial determination by the arbitrator. The appellate court filed the necessary statement certifying the cause for further review, and we allowed the respondent's subsequent petition for leave to appeal (107 Ill. 2d R. 315(a)).

We must first determine the status of the evidentiary rulings made by the arbitrator at the hearing. As we have indicated, the employer presented the evidence depositions of Dr. Chester Laskowski and Dr. Donal O'Sullivan at the proceedings before the arbitrator. When the depositions were originally taken, counsel for each party registered a number of objections to testimony by the two deponents on direct examination and cross-examination. At the hearing before the arbitrator, the arbitrator stated that he would review the depositions and would rule on the objections. The arbitrator subsequently did so. The transcripts of the depositions appear in the record, and they contain the symbols "S" and "O," which the arbitrator used to indicate whether he was sustaining or overruling the particular objections. The arbitrator sustained the claimant's objections to much of the physicians' testimony concerning the effects on Johnson of a blood-alcohol level of .238%.

Section 16 of the Workers' Compensation Act provides, in pertinent part:

"The records kept by a hospital, certified to as true and correct by the superintendent or other officer in charge, showing the medical and surgical treatment given

an injured employee in such hospital, shall be admissible without any further proof as evidence of the medical and surgical matters stated therein, but shall not be conclusive proof of such matters." (Ill. Rev. Stat. 1985, ch. 48, par. 138.16.)

We conclude that the results of the blood-alcohol test were admissible under that provision. The test was performed in the course of the injured employee's "medical or surgical treatment" at Northwest Community Hospital, and the record of the test, including the results, was therefore "admissible as evidence of the medical and surgical matters stated therein." It may be noted that Johnson's blood-alcohol concentration was well in excess of the .10% level at which intoxication is statutorily presumed. (See Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b)(3).) We do not rely directly on that presumption here, however, and therefore we need not consider the claimant's argument that the statutory presumption is unavailable because there was no showing by the proponent of the evidence that the blood test was conducted in conformity with the administrative rules governing such procedures. (See Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a).) In any event, that foundational requirement applies only to proceedings, civil or criminal, "arising out of an arrest for" the offense of driving while under the influence of alcohol or drugs or for a similar violation (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)) and therefore would not appear to govern the admissibility of the evidence in this proceeding.

Both Dr. Laskowski and Dr. O'Sullivan offered opinions regarding the usual physiological effects of intoxication of the level shown here. The claimant objected to their testimony, contending that it was hypothetical and without foundation. The claimant argued that the physicians were not familiar with Johnson's physical condition and therefore did not know what precise effects intoxica-

tion of the degree shown here would have produced. Except when the Act provides otherwise, the rules of evidence apply to Industrial Commission proceedings, including those conducted before the arbitrator. (*Coriell v. Industrial Comm'n* (1980), 83 Ill. 2d 105, 110; 50 Ill. Admin. Code §7030.70 (1985).) The two physicians' opinions were based on the information contained in the medical records, which disclosed that Johnson's blood-alcohol concentration was .238%. Reliance on such data was proper. (See *Wilson v. Clark* (1981), 84 Ill. 2d 186.) Moreover, the physicians were qualified to explain the well-established effects of intoxication on the human body. The claimant's objection went to the weight to be given to the physicians' testimony and did not affect the admissibility of that evidence.

We next consider the merits of the Commission's decision denying compensation. The parties to the instant appeal do not agree on what specific issues are presented in the case and what was decided in the proceedings below. The respondent believes that the principles governing the conduct of traveling employees are applicable here. Under those rules, compensation will be denied if the conduct giving rise to the accident was not reasonable and foreseeable. (*Hoffman v. Industrial Comm'n* (1985), 109 Ill. 2d 194, 200.) The respondent contends that Johnson's consumption of alcohol and his resulting intoxication were unreasonable and unforeseeable and that his injuries are, for that reason, not compensable. See, *e.g.*, *Buchino v. Industrial Comm'n* (1988), 172 Ill. App. 3d 162.

The claimant insists that there is no disagreement that the employee was acting in the course of his employment when the accident occurred. Relying on *District 141, International Association of Machinists & Aerospace Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544, and *M&M Parking Co. v. Industrial Comm'n*

(1973), 55 Ill. 2d 252, 256, the claimant contends that the only issue before the court is whether the employee was so intoxicated at the time of the occurrence that he was not able to follow his occupation. That is essentially the view of the case adopted by the appellate court, Industrial Commission division, which reinstated the arbitrator's award. In its decision the appellate court asserted, "It is unquestioned that the petitioner's evidence showed that when the accident occurred Bennie was driving to meet with another union official to discuss union business." 174 Ill. App. 3d at 998.

The respondent did not expressly raise the traveling-employee argument in the proceedings below, however, and the Industrial Commission did not address the point. In light of our resolution of the appeal, we have no occasion to consider the merits of the alternative theory now urged by the respondent in support of the Commission's denial of compensation.

An employee's injury is not compensable under the Workers' Compensation Act unless it arises out of and in the course of the employment. (Ill. Rev. Stat. 1985, ch. 48, par. 138.2.) " 'Arising out of' refers to the causal connection between the employment and the accidental injury, which exists when the injury's origin is in some risk related to the employment. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 366; *Jewel Companies v. Industrial Com.* (1974), 57 Ill. 2d 38, 40.) The requirement that the injury occur 'in the course of' employment is concerned with the 'time, place, and circumstances of the injury.' (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 366.)" *Unger v. Continental Assurance Co.* (1985), 107 Ill. 2d 79, 85.

Professor Larson states the following rule:

"Voluntary intoxication which renders an employee incapable of performing his work is a departure from the course of employment. Otherwise, apart from special

statute, evidence of intoxication at the time of injury is ordinarily no defense, at least unless intoxication was the sole cause of injury." (1A A. Larson, The Law of Workmen's Compensation §34.00, at 6—64 (1985).)

In 36 States, intoxication is a separate statutory defense to a workers' compensation claim, and statutes in three other States provide for a reduction in compensation benefits in the case of intoxication; the statutes describe in varying terms the causal relationship between intoxication and injury that will defeat a claim or reduce an award. (See 1A A. Larson, The Law of Workmen's Compensation §34.31, at 6—89 through 6—92 (1985).) Unlike the majority of States, Illinois has no statute specifically recognizing intoxication as a defense to a workers' compensation claim or as grounds for a reduction in workers' compensation benefits.

From Professor Larson's statement of the rule quoted above, it would seem that an employer raising the defense of intoxication could prevail on either of two separate grounds. First, an employee, though in the course of his employment, will be denied recovery if his intoxication is the cause of the injury—that is, if the injury arose out of the intoxication rather than out of the employment. Second, excessive intoxication may constitute a departure from the course of employment, and an employee who is injured in that condition does not sustain an injury in the course of his employment. Under the latter rationale, intoxication of a sufficient degree is viewed as an abandonment of employment, or a departure from employment. See 1A A. Larson, The Law of Workmen's Compensation §34.21, at 6—83 through 6—84 & n.16.1 (1985).

In the proceedings below, the appellate and circuit courts, the Industrial Commission, and the arbitrator relied primarily on this court's decision in *District 141, International Association of Machinists & Aerospace*

*Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544. In *District 141*, the claimant's decedent was killed when the car he was driving collided with another vehicle, and this court upheld the Commission's decision awarding compensation. The decedent, a union executive traveling on business, had spent the hours preceding the fatal accident discussing union matters with several colleagues. Following the accident the decedent's blood-alcohol level was .186%, and there was additional testimony that he and the others had been drinking. The accident occurred while the employee apparently was returning to his hotel for the night. The employer contended, among other things, that the decedent was not within the scope of his employment at the time of the fatal accident. Rejecting the employer's argument, the court determined that the decedent was a traveling employee and that "his fatal injuries may be compensable even though he might have been engaged in activities other than those he was specifically instructed to perform by his employer. [Citation.]" (79 Ill. 2d at 554.) The court concluded that the decedent's conduct in drinking while discussing business with his colleagues was reasonable and foreseeable and therefore fell within the scope of his employment.

In *District 141* the employer also raised, as a separate defense, the contention that the decedent's intoxication at the time of the accident barred compensation. Discussing the general principles applicable to the intoxication defense, the court stated:

> "In order for compensation to be denied on the basis that an employee was intoxicated, 'the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment. (*Frith v. Owners of Steamship Louisianian*, 2 K. B. 155; 5 B. W. C. C. 410; *O'Brian v. Star Line*, 45 Scotch L.T. 935; 1 B. W. C. C. 177.) Whenever an employee is so

drunk and helpless that he can no longer follow his employment he cannot be said to be engaged in his employment, and when injured in that condition his injury does not arise out of his employment. But intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury. Our statute was not designed to make contributory negligence of the employee, or a defense of that nature, a bar to his recovery under the Workmen's Compensation act, where, as in this case, his injury arose out of and in the course of his employment. *Alexander v. Industrial Board,* 281 Ill. 201.' *Hahnemann Hospital v. Industrial Board* (1918), 282 Ill. 316, 327; *M&M Parking Co. v. Industrial Com.* (1973), 55 Ill. 2d 252, 256." *(District 141,* 79 Ill. 2d at 557-58.)

Noting that the evidence of the degree of the decedent's intoxication was conflicting, the court in *District 141* declined to disturb the Commission's decision allowing compensation. Three members of the court dissented, believing that the decedent's intoxication was such that it could not be said that the accident arose out of and in the course of the decedent's employment. 79 Ill. 2d at 559 (Underwood, J., joined by Kluczynski, J., dissenting); 79 Ill. 2d at 562 (Ryan, J., dissenting).

The Industrial Commission exercises original, rather than appellate, jurisdiction in reviewing decisions of the arbitrator and is not bound by the arbitrator's findings. This principle applies whether or not the Commission hears additional evidence on review. *(Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 405; *Master Leakfinding Co. v. Industrial Comm'n* (1977), 67 Ill. 2d 517, 524-25; *Orr v. Industrial Comm'n* (1970), 47 Ill. 2d 242, 243.) Thus, it is within the province of the Commission to judge the credibility of witnesses, to draw reasonable inferences from their testimony, and to determine what weight the testimony is to be given. *(Smith v. Industrial*

*Comm'n* (1983), 98 Ill. 2d 20, 23-24.) Accordingly, the decision of the Industrial Commission on a question of fact will not be disturbed unless it is contrary to the manifest weight of the evidence. *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 44; *Lyons v. Industrial Comm'n* (1983), 96 Ill. 2d 198, 204; *Pazara v. Industrial Comm'n* (1980), 81 Ill. 2d 76, 83-84.

Although it is said that the ultimate conclusion must appear as a matter of law for the intoxication defense to succeed (see *District 141*, 79 Ill. 2d at 557 (" 'the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment' ")), such a decision will depend on a variety of factual predicates, as the present case illustrates (see *Lefens v. Industrial Comm'n* (1918), 286 Ill. 32 (whether employee was intoxicated was question of fact)). In its decision, the Commission stated that it was the respondent's contention "that at the time of the accident the Employee was intoxicated to the extent that his injuries did not arise out of his employment, but arose from his drunken condition instead." There were a number of factual disputes raised by the parties, and conflicting inferences could have been drawn from the evidence presented. Among the contested issues were questions relating to the degree of employee Johnson's intoxication, his capacity to continue carrying out his employment, and the cause of the accident. The Commission specifically noted that there was no evidence in the present case "that the employee had, in fact, been performing his job in an apparently acceptable manner *after* the consumption of the alcoholic beverages before the accident." (Emphasis in original.) The Commission denied compensation, finding that the claimant failed to prove that "the Employee's accidental injuries of January 29, 1983 arose out of and in the course of his employment."

In support of its decision, the Commission also noted the personal circumstances of the employee and the changing public attitudes toward the consumption of alcohol. As our discussion demonstrates, however, we do not regard those considerations relevant to our decision here.

The medical testimony before the Industrial Commission indicated that a person having a blood-alcohol level of .238%, as shown here, would be moderately to severely intoxicated, would have clouded judgment, and would not be able to properly control a motor vehicle. As the Commission expressly noted in its decision, there was no evidence in the present case that the injured employee was able to perform his work after he became intoxicated. The Commission was free to infer from those circumstances that the employee was so intoxicated that he could no longer follow his employment and thus could not be said to be engaged in his employment at the time of the occurrence. (See *District 141*, 79 Ill. 2d at 558 ("Whenever an employee is so drunk and helpless that he can no longer follow his employment he cannot be said to be engaged in his employment, and when injured in that condition his injury does not arise out of his employment").) As a separate matter, the description of the accident appearing in the police report, which indicated that the injured employee made a left turn in front of another vehicle, together with the evidence regarding the employee's blood-alcohol level, which showed that intoxication of that degree would have rendered him incapable of controlling a motor vehicle, supported the inference that the accident was caused by the employee's intoxication and that his injuries therefore did not arise out of his employment.

The present case may therefore be distinguished from prior decisions in which the intoxication defense has been rejected and awards of compensation by the Commission have been upheld on judicial review, notwith-

standing evidence that the employee had consumed alcohol. (See *M & M Parking Co. v. Industrial Comm'n* (1973), 55 Ill. 2d 252 (employee with blood-alcohol level of .201% fell from elevator at work site; employee satisfactorily performed job duties as car-hiker in parking garage in period preceding occurrence of injury); *County of Cook v. Industrial Comm'n* (1988), 177 Ill. App. 3d 264 (employee with blood-alcohol level of .25% injured when truck in which he was riding was hit by another vehicle; employee performed assigned job task of shoveling gravel after drinking at lunch, and medical testimony showed that intoxication of that level would not necessarily have affected employee's job performance); *Freeman United Coal Mining Co. v. Industrial Comm'n* (1987), 160 Ill. App. 3d 524 (blood-alcohol level of .155% and urine-alcohol level of .306%; no evidence that employee was unable to perform job duties, and evidence suggested that cause of accident was unrelated to drinking); see also *Graphic Group & KLW, Inc. v. Industrial Comm'n* (1988), 167 Ill. App. 3d 1041 (cause of injury unrelated to employee's on-the-job consumption of alcohol).) We conclude that the Commission's decision in this case was not against the manifest weight of the evidence, and therefore we decline to disturb the Commission's denial of compensation.

For the reasons stated, the judgment of the appellate court, Industrial Commission division, is reversed, and the judgment of the circuit court of Cook County, confirming the decision of the Industrial Commission, is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.

JUSTICE RYAN, concurring:

I concur with the decision of the majority. However, in my opinion, whether the employee was in the course of his employment when he was injured was, in this case, a question of law and not of fact. The opinion notes Professor Larson's statement that "[v]oluntary intoxication which renders an employee incapable of performing his work is a departure from the course of employment." (1A A. Larson, The Law of Workmen's Compensation §34.00, at 6–64 (1985).) This rule has been accepted by this court, which has stated that intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat recovery. *District 141, International Association of Machinists & Aerospace Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544, 558; *M & M Parking Co. v. Industrial Comm'n* (1973), 55 Ill. 2d 252, 256.

I have no quarrel with the application of this rule to the usual employment activities. If the employee could perform the work associated with his duties, then, under the rule, recovery is and should be allowed, even though the employee had consumed a considerable amount of alcohol. However, when the legislature has enacted a statute making it illegal to drive an automobile with an alcohol concentration in the blood above a certain level, and the employee had an alcohol concentration in his blood above that, and was driving an automobile as a part of his employment, then I would hold that the employee had departed from the course of his employment. He could no longer legally perform his duties of driving an automobile. I would, therefore, hold that he was legally incapacitated.

It is a Class A misdemeanor to drive a motor vehicle with an alcohol concentration in one's blood of 0.10% or more. (Ill. Rev. Stat. 1987, ch. 95½, par. 11–501.) Arti-

cle V of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—500 *et seq.*) and article II of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—201 *et seq.*) express a strong public policy of this State against driving a motor vehicle with alcohol concentration in one's blood in excess of 0.10% or driving a motor vehicle while under the influence of alcohol. Conforming to this public policy, I would hold that a person who, while in the course of his employment, operates a motor vehicle in violation of these statutory provisions, and is injured in an accident while doing so, has departed from the course of his employment and is not entitled to recover under the Workers' Compensation Act.