MARGARET MILLER, Plaintiff-Appellee, v. ROBERT REYNOLDS *et al.*, Defendants-Appellants.

Second District   No. 2—89—1296

Opinion filed July 26, 1990.—Rehearing denied August 27, 1990.

Steven L. Larson and Linda E. Spring, both of Wildman, Harrold, Allen & Dixon, of Waukegan, for appellants.

Robert B. Patterson and Danielle Jaeschke, both of Drumke & Patterson, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendants, Robert and Eileen Reynolds, appeal from the judgment of the circuit court of Lake County entered on a jury verdict in favor of plaintiff, Margaret Miller, for $375,000 ($750,000 less 50% attributable to plaintiff's negligence) in her action seeking recovery under a theory of negligence for injuries sustained in a fall while on a ladder on defendant's premises at a time when plaintiff was employed by defendants as a domestic employee.

Defendants raise the following issues on appeal: (1) whether plaintiff's claim is barred by the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*); (2) whether defendants owed plaintiff a duty to warn her about dangers inherent in the use of a ladder; (3) whether defendants' failure to warn proximately caused plaintiff's injuries; (4) whether the trial court erred in instructing the jury; and (5) whether the trial court erred in excluding certain expert testimony.

Evidence adduced at trial establishes the following facts. On June 4, 1986, plaintiff, who was 61 years of age, sustained serious injuries when she fell from an eight-foot magnesium ladder while attempting to bait a raccoon trap on the roof of defendants' house. At that time, plaintiff was employed full time by defendants as a live-in cook and housekeeper. Plaintiff had been employed by defendants for about two years prior to her accident. She testified that her duties consisted mainly of cooking and housekeeping. Her duties were principally con-

fined to the interior of the house, although on occasions she performed chores outside the house. She had not climbed the ladder during her employment but had held it for Mrs. Reynolds on several occasions.

Several days prior to her accident, plaintiff heard animal noises above the ceiling and informed defendants. On June 3, 1986, an animal control officer visited defendants' home and, using a ladder provided by defendants, placed a raccoon trap on the flat roof about two feet from the edge. Plaintiff testified that she and Mrs. Reynolds were present when the trap was placed, and the officer instructed them how to set and bait the trap. The officer testified that he baited the trap at that time. Plaintiff, however, testified that, in Mrs. Reynolds' presence, the animal control officer then asked her for food to put in the trap. Plaintiff responded that she would get the food and put it in the trap. Mrs. Reynolds expressed no objection. Plaintiff went inside to get food. When she returned, Mrs. Reynolds and the animal control officer were gone. Plaintiff climbed the ladder and baited the trap.

On the morning of June 4, she again climbed the ladder to check the trap and observed a raccoon inside. She informed the defendants that she had climbed the ladder and a raccoon was in the trap. Mrs. Reynolds told her to call the animal control officer to take the raccoon away, which she did. Nothing was said to her about climbing the ladder. When the animal control officer came, he took the raccoon, set the trap, and told plaintiff "the same things applied that I talked to you about yesterday." After he left, she climbed the ladder and put food in the trap. Plaintiff testified that she did not consider climbing the ladder outside as part of her housekeeping job, but felt that defendants wanted her to do the job of putting food in the trap because they had made no comment to her earlier when she told them she had done so.

Plaintiff climbed the ladder again about 1 p.m. and tossed food in the trap. At 4 p.m. she again climbed the ladder and tossed some food in the trap. This time she felt the ladder wobble, placed her hands on the edge of the roof, and the ladder fell over. She hung from the roof for a short time, fell, and was seriously injured.

Mr. Reynolds testified that plaintiff's job involved indoor work and did not involve climbing ladders. He further stated that if he had seen plaintiff on a ladder, he would have fired her. Mrs. Reynolds similarly acknowledged that plaintiff's job was indoor work and her duties were to clean the house, launder, cook, and perform other work of that nature. Plaintiff was not in charge of the raccoon problem,

and her duties did not involve climbing ladders. She assumed plaintiff was present when the animal control officer came out on June 3 and heard his instruction on how to check and bait the trap. She did not remember plaintiff telling her and her husband that she had checked the trap on the morning of June 4.

Plaintiff submitted evidence that she suffered a broken leg requiring surgery. Complications followed which required additional surgery and lengthy hospitalization and resulted in disfigurement and partial disability of plaintiff's leg.

The jury returned a verdict in favor of plaintiff in the amount of $750,000 but found plaintiff 50% negligent, and the award was reduced to $375,000. The jury responded negatively to a special interrogatory asking "[d]id the plaintiff's injuries arise out of the course of her employment?"

Defendants initially contend that plaintiff's sole remedy for her injuries is pursuant to the Workers' Compensation Act and that she was not entitled to recovery in a common-law negligence action. During the proceedings below, defendants' motion to dismiss, motion for summary judgment, and post-trial motion all raised the exclusivity of the Workers' Compensation Act and were denied.

■ Section 5(a) of the Workers' Compensation Act provides, in pertinent part, as follows:

"5. (a) No common law or statutory right to recover damages from the employer, *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(a).)

This provision requires exclusive resort to the workers' compensation remedy for any injury arising out of and in the course of the employment. (*Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 447, 448 N.E.2d 866.) While the question of whether an injury arose out of and in the course of employment has most often been litigated in workers' compensation actions, where compensability under the Workers' Compensation Act is at issue, the tests for compensability under the Act and the exclusivity of the Act are identical (*Unger v. Continental Assurance Co.* (1985), 107 Ill. 2d 79, 85, 481 N.E.2d 684), and exclusivity may be raised as an affirmative defense to a common-law action. *Hindle v. Dillbeck* (1977), 68 Ill. 2d 309, 317-18, 370 N.E.2d 165.

It is undisputed that the Act is applicable to the employment relationship here. (Ill. Rev. Stat. 1985, ch. 48, par. 138.3(18).) Plaintiff

maintains, however, that her injury did not arise from and in the course of her employment and, accordingly, her common-law action was not barred.

■■ ■ "Arising out of" refers to the causal connection between the employment and the accidental injury. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 480, 548 N.E.2d 1033; *Unger*, 107 Ill. 2d at 85, 481 N.E.2d at 687.) The requirement that the injury occurred "in the course of" employment is concerned with the time, place and circumstances of the injury. (*Paganelis*, 132 Ill. 2d at 480, 548 N.E.2d at 1038-39; *Unger*, 107 Ill. 2d at 85, 481 N.E.2d at 687.) "An injury will generally be found to arise 'in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto.' " (*Unger*, 107 Ill. 2d at 85-86, 481 N.E.2d at 687, quoting *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 278, 201 N.E.2d 434.) Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common-law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. *Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 58, 541 N.E.2d 665.

■■ Plaintiff contends that the act of baiting the raccoon trap was not within the scope of her duties as established by evidence at trial. In support of her contention that her injuries did not occur in the course of her employment, she points to the testimony at trial, including defendants' testimony, that her duties pertained to the interior of the house and did not include climbing ladders. It has been stated, however, that "[a]n act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment." (1A A. Larson, Workmen's Compensation Law §27.00 (1985).) This principle is clearly applicable here and brings plaintiff's injury within the course of her employment as a matter of law. It is also clear that plaintiff's injury arose out of the employment.

■■ ■ Plaintiff's argument that the act of checking and baiting the raccoon trap was beyond the scope of her duties such that her common-law action was not barred is also unpersuasive for another reason. It has been stated:

"'[I]f the employee voluntarily and in an unexpected manner

exposes himself to a risk outside any reasonable exercise of his duties, any injury incurred as a result will not be within the course of employment.' (*Segler v. Industrial Com.* (1980), 81 Ill. 2d 125, 128.) Nevertheless, the employer may be held liable in that case 'if he has knowledge of or has acquiesced in such a practice of [*sic*] custom.' (81 Ill. 2d 125, 128; see 1A A. Larson, Workmen's Compensation sec. 27.31(b) (1982).)" (*Bradway v. Industrial Comm'n* (1984), 124 Ill. App. 3d 983, 985, 464 N.E.2d 1139, 1141.)

The undisputed evidence here is that Mrs. Reynolds was present and expressed no objection when plaintiff was asked to find food for the trap by the animal control officer. Furthermore, plaintiff testified that she apprised defendants that she was tending to the trap, and they voiced no objection. Based on this evidence, even to the extent plaintiff's conduct could be deemed to expose her to a risk outside the reasonable exercise of her duties, defendants' acquiescence is a necessary inference.

■■ ■ Under the facts here, we conclude that plaintiff's injury arose from and in the course of her employment as a matter of law, and, accordingly, she was barred from maintaining a common-law negligence action against defendants, her employers. A jury verdict will only be reversed when the evidence, viewed most favorably to the party prevailing in the trial court, nevertheless so overwhelmingly favors the appellant that no contrary verdict could stand. (*York v. Stiefel* (1983), 99 Ill. 2d 312, 321, 458 N.E.2d 488; *Gruse v. Belline* (1985), 138 Ill. App. 3d 689, 695, 486 N.E.2d 398; see *Hindle*, 68 Ill. 2d at 319, 370 N.E.2d at 169.) Applying this standard and the applicable principles of law to the evidence here, the jury's verdict must be reversed. In view of our decision on this issue, it is unnecessary to consider the remaining issues raised by defendants.

The judgment of the circuit court of Lake County is reversed.

Reversed.

INGLIS and McLAREN, JJ., concur.