HENRY H. AUGUSTINE, Successor Guardian of the Estate and Person of Richard F. Griffin, *et al.*, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*, Appellant and Cross-Appellee (Robert L. Silberstein, Appellee and Cross-Appellant).

Third District (Industrial Commission Division)   No. 3—91—0207WC

Opinion filed November 18, 1992.—Rehearing denied February 5, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellant.

David B. Mueller, of Cassidy & Mueller, and Robert Silberstein, *pro se*, both of Peoria, for appellee Robert L. Silberstein.

John F. Power III, of Kubiesa & Power, of Westmont, and Arnold G. Rubin and Richard A. Kimnach, both of Anesi, Ozmon & Rodin, Ltd., and Joel D'Alba, Stephen Feinberg, and Susan Brannigan, all of Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd., both of Chicago, for *amici curiae*.

JUSTICE H. LEWIS delivered the opinion of the court:

The Illinois Industrial Commission (hereafter referred to as the Commission) appeals the judgment of the circuit court and presents issues pertaining solely to its award of attorney fees to the claimant's counsel. The claimant, Richard F. Griffin, was rendered permanently and totally disabled as the result of a fall on March 5, 1983. As a consequence of his injuries, the claimant has a profound neurological deficit, including paralysis of all four extremities, impaired pulmonary and respiratory function, and inability to eat or speak. The employer, Pabst Brewing Company, at no time disputed that the claimant was permanently and totally disabled.

Claimant's counsel, Robert L. Silberstein, negotiated a structured settlement for the claimant with the employer's insurer and negotiated his own fee with the insurer separately. This settlement contract, including the proposal with respect to counsel's fees, was presented to the Commission for its approval. The proposed settlement provided for the following payments to the claimant during his lifetime: $315,000 to be paid each year with a 3% annual cost of living increase and special allocations of $215,000 immediately; $1,200,000 in the 16th year; $2,100,000 in the 21st year; $3,500,000 in the 26th year; and $3 million in the 31st year. It is undisputed that the life expectancy of the claimant, who was 41 years old at the time of the acci-

dent, is markedly reduced as a consequence of his virtually total paralysis that renders him highly susceptible to infection and respiratory, bladder, and kidney dysfunction. The terms of this proposed settlement contract provided further that claimant's counsel would receive attorney fees in the amount of $4,202 per month at a 3% annualized cost of living increase for counsel's lifetime with 30 years guaranteed. Following a hearing, in an order dated August 6, 1986, Commissioner Barbara Sherman found that the parties failed to show that the settlement was in the claimant's best interest and, accordingly, rejected the settlement contract.

Upon judicial review, in an order entered March 10, 1988, the circuit court ruled that the Commissioner's decision of August 6, 1986, rejecting the proposed settlement was an abuse of discretion and against the manifest weight of the evidence. The circuit court remanded the cause to the Commission with directions that in the event another settlement contract was presented for consideration, it was to be considered in the light of the circuit court's findings that the prior rejection was an abuse of discretion and against the manifest weight of the evidence.

Another settlement contract was presented to the Commission. In a decision dated April 11, 1988, following a hearing upon remand, the Commission found this settlement contract to be in the best interest of the claimant and his employer. The settlement approved by the Commission for the claimant provided more benefits to him than the prior, rejected proposed settlement had done. In its decision the Commission stated that "the parties have agreed that the [stated] allocations and such predetermined amount represent and stand for a full, final and complete compromise settlement of all claims for compensation for any and all alleged injuries and disabilities, either temporary or permanent." In this decision the Commission retained jurisdiction of the claim for the purpose of fixing the claimant's attorney fees.

In a 16-page decision dated January 13, 1989, the Commission addressed the matter of attorney fees, finding that claimant's counsel seeks a fee of $700,000 and awarding claimant's counsel fees as follows:

"[Claimant's] attorney is entitled to receive 20% of 364 weeks at a permanent total disability rate of $327.23, or $23,822.34[,] in recognition of the fact that while no dispute existed as to the extent of [claimant's] disability, substantial time and effort have been required of Mr. Silberstein in resolving disputes arising pursuant to [section] 8(a) of the [Workers' Compensation] Act [Ill. Rev. Stat. 1983, ch. 48, par. 138.8(a)]. In

further consideration of the time and effort required in resolving these disputes and obtaining a settlement in [claimant's] interest, the Commission awards [claimant's] attorney further fees of $18,750.00, representing 150 hours at a rate of $125.00 per hour. [Claimant] is to receive credit against this fee award in the amount of $17,153.01 for fees already received by his attorney. [Claimant's] attorney is therefore entitled to now receive from [claimant] the net amount of $25,419.33."

In this decision the Commission described the settlement agreement proposed in March of 1988 and approved by it in its decision of April 11, 1988, as follows:

"In March 1988, the parties presented a settlement contract which provided essentially that [claimant] would receive a first installment of $758,350.00, that thereafter he would receive $343,350.00 per year compounding at the annual rate of 3% throughout the remainder of his life, and that in addition thereto, [claimant] would receive $200,000.00 after 5 years, $445,000.00 after 8 years, $1,450,000.00 after 13 years, $2,600,000.00 after 18 years, and $4,100,000.00 after 23 years, and $6,100,000.00 after 28 years. The foregoing payments would be payable only for and during the life of Richard Griffin, and payments would cease upon his death."

Proposed in that settlement, but not approved, were the following terms pertaining to claimant's attorney fees, which were described by the Commission in its decision of January 13, 1989, as follows:

"Respondent and [claimant's attorney] separately negotiated [claimant's] attorney's fee as part of the settlement agreement to provide that Attorney Robert Silberstein would be paid $3,612.00 per month, compounding at the annual rate of 3%, for life, with payments guaranteed for 30 years. An additional $100,000.00 would be paid after the first five years."

In this decision the Commission found further that, in order to obtain Commission approval of the settlement petition pursuant to remand, the parties had agreed to pay to the claimant the amount of $700,000, which was the amount the insurer had previously agreed to pay as Robert Silberstein's attorney fee, and to reserve the question of attorney fees and expenses for later determination by the Commission. The amount of $700,000 includes $600,000 as the purchase price of an annuity for Robert Silberstein.

In this same decision the Commission expressed its view as follows:

"[R]ead in its entirety, [section] 16a [Ill. Rev. Stat. 1983, ch. 48, par. 138.16a] evinces a legislative determination that attorneys' fees should be limited in Workers' Compensation claims, and the provisions relating to attorneys' fees should be strictly construed. This is particularly so in that prior to September 15, 1980, no such limitations on attorneys' fees were included in the Act. Where an attorney seeks fees beyond those provided by statute the burden is on the attorney to prove entitlement to further fees. On the basis of the maximum weekly compensation rate for an accident occurring on March 5, 1983, the highest possible attorneys' fee with specific statutory authorization could not exceed $32,497.92 (20% of 364 weeks at $446.40 per week). On the basis of Richard Griffin's compensation rate the fee would not exceed $23,822.34 (20% of 364 weeks at $327.33 per week)."

The Commission expressed the further opinion that only in cases where the Commission has found that the employer has acted improperly, as provided in section 16 of the Workers' Compensation Act (hereafter referred to as the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.16), are employers or their agents, that is, insurance carriers, to pay attorney fees; otherwise, claimants' attorney fees are recoverable only from compensation actually paid to the claimant, pursuant to section 16a(J).

In the decision of January 13, 1989, the Commission found, *inter alia*, that it is and has been undisputed that the claimant has been entitled to disability benefits since the accident, that the accident resulted in a statutory permanent disability such that claimant is entitled to weekly disability compensation for the remainder of his life, and that all compensation has been paid in a timely manner. The Commission found further:

"The disputes that have arisen have related to the interpretation, application, and relationship of Sections 8(a) and 12, that is, disputes related to the right of the employer to have the employee examined and to the necessity of certain medical, rehabilitation and institutionalization services. Respondent did not act unreasonably or vexatiously in its efforts to obtain reports from providers of services rendered or in seeking independent evaluation of Richard Griffin in order to evaluate the propriety of services being rendered to him."

The Commission found that claimant's attorney had charged and received $15,353.01 in attorney fees, representing 20% of temporary total disability compensation paid from September 12, 1983, through

March 17, 1988, in violation of section 16a(K). The Commission found further that claimant's attorney had also charged and received $1,800, representing 20% of a $9,000 computer purchased by the employer for claimant's rehabilitation. The Commission found that counsel is entitled to the $1,800 fee because his efforts contributed to the employer's eventual agreement to purchase the computer.

Further findings of the Commission included the following:

"4) Despite repeated requests by the Commission for same, there is no competent evidence from which the Commission can determine the extent of disputed and/or undisputed medical expenses incurred in the care of Richard Griffin. While reference was made that his costs could be reduced by 22%, and that costs could reasonably be reduced by half, there is no persuasive evidence in support of these references. While Mr. Perry of Kemper [the insurer] at times testified to the unusual nature of this case, he also claimed, both in his testimony and in a letter to the Commission dated February 25, 1988[,] to have handled many claims such as this. Larry Hostetler, also of Kemper, testified to the effect that Kemper's position regarding reduction of costs was not based on any investigation or research, but was a speculative estimate raised as a starting point for settlement negotiations. The testimony shows that the only areas of dispute involved some services and technology in psychological rehabilitation, the necessity of daily physician visits and private nursing care while claimant was living in a nursing home, and some transportation costs. Mr. Perry's testimony confirms that there were substantial undisputed costs pursuant to [section] 8(a).

5) The Commission finds that an employer's (or its agent's or insurance carrier's) negotiation of an employee's attorney's fee and negotiation of such fee separate from negotiation of a settlement for the benefit of the claimant such as occurred between Kemper through Mr. Perry and Attorney Silberstein is not provided for in the Workers' Compensation Act, is in contravention of the intent, expressed and implied, of [sections] 16a (B), (C) and (I) of said Act, and creates at least an appearance of impropriety. Neither is a fee in such amount as was negotiated between Kemper and Mr. Silberstein contemplated in the Act."

The Commission noted the factors set forth in Rule 2—106 of the Code of Professional Responsibility (107 Ill. 2d R. 2—106) which, it said, it will look to in determining whether and to what extent an at-

torney is entitled to fees beyond the fee specifically provided in section 16a. The Commission expressly found:

"1) No time records were presented, such that it is impossible to determine with any reasonable certainty the time expended by Mr. Silberstein in litigation and settlement of this claim. In the absence of such records it is also impossible to determine whether all services rendered were reasonably necessary. The Commission further finds that in no event is Mr. Silberstein entitled to fees or expenses for time, services or costs expended or incurred in support of his petition for attorney's fees.

2) The Commission further finds it has authority to fix [claimant's] attorneys' fees and expenses in this case only in relation to services rendered and costs incurred to the time of approval of the settlement. Future fees for services to be rendered or costs to be incurred in administering the proceeds of the settlement, which are part of claimant's estate, are subject to the jurisdiction of probate court.

3) It is clear that most of the time and effort expended in this case were directed at negotiation of and obtaining approval of the settlement which was negotiated between Mr. Silberstein and Mr. Perry. Mr. Perry's testimony regarding disputes, time expended, and negotiations must be viewed in the context of his essential testimony, upon inquiry of the Commission at the hearings of both settlement petitions, that he 'was most anxious to get this case settled,' that his employer gives him a certain settlement authority, that as long as he stays within that authority he and his employer are happy, and that it didn't matter to him what was apportioned as [section] 8(a) expense, disability compensation or attorneys' fees, so long as a settlement within his authority was approved.

4) As previously noted, the only disputed issues were the extent of [the employer's] right to medical examination of [claimant] and the related issue of the necessity of some services rendered in his mental rehabilitation and medical care. The legal research required for the litigation and settlement of this claim was very minimal. Those provisions of the Act previously cited herein make clear the Illinois legislature was aware that industrial accidents may result in an employee's quadriplegia, and it is precisely in such cases (of complete loss of both arms or legs (Section 8(e)(18)) where liability to pay compensation in a timely manner is undisputed, that the legislature determined that at-

torneys' fees should be set in a nominal amount not exceeding $100.00. Those are also the cases in which physical and mental rehabilitation, maintenance and institutionalization, contemplated in [section] 8(a)[,] are most commonly required. Perhaps the most novel aspect of the case is in the psychological assistance and technology being implemented to enhance Mr. Griffin's communication abilities. To the extent that the employer evaluated these services, their experts (Barry Romich and Peter Erickson) concurred with the decisions being made by [claimant's] providers in regard to psychological rehabilitation.

5) The professional relationship between Richard Griffin and Attorney Silberstein lasted nearly 5 years, from undertaking representation to obtaining approval of the settlement. While there were periods of time in which this case was very time consuming, notably the periods of negotiation and hearing of the first settlement which was rejected, preparing briefs for hearing by the Circuit Court on appeal of rejection of the settlement, and negotiation and hearing of the second settlement which was approved, from the evidence presented it appears that this case would not significantly have precluded other employment during the greater duration of the relationship.

6) Throughout the pendency of this claim, Attorney Silberstein has responded appropriately and successfully to the petitions filed by [the employer], and has acted so as to successfully maintain the quality of care of Mr. Griffin recommended by those entrusted with his care, up to and including negotiation of a settlement in Mr. Griffin's best interest in that the settlement should provide financially for his substantial needs, has increased his independence for decisions affecting his life and saves him the expense of ongoing litigation. Although it has been undisputed since 1983 that the accident herein caused the statutory permanent and total disability of [claimant], the decision not to have his disability adjudicated prior to approval of the settlement agreement has deprived him of the benefits of the Rate Adjustment Fund pursuant to [section] 8(g), or approximately $11,230.00, based on an adjudication prior to July 15, 1984."

In this decision the Commission noted that the claimant requests that the settlement order approved by the Commission on April 11, 1988, be modified to include a finding that the settlement provides solely for the future medical expenses of the claimant and that the settlement specifically excludes any provision for funding of claimant's dis-

ability, either temporary or permanent, or for reimbursement of wages lost or to be lost. The Commission, however, made no such finding.

Upon judicial review, Robert Silberstein argued that the Commission's decision of January 13, 1989, was against the manifest weight of the evidence and an abuse of discretion and should, therefore, be set aside. Robert Silberstein asked the circuit court to enter an order fixing attorney fees at $700,000 with interest to be paid thereon at the rate of 8% per annum from March 18, 1988, the date on which the first payments were to be paid to the claimant pursuant to the settlement agreement. The circuit court found in an order entered April 20, 1989, that the Commission's decision on January 13, 1989, is against the manifest weight of the evidence and an abuse of discretion and remanded the cause to the Commission "with directions that Attorney Robert Silberstein be awarded a substantially higher attorney fee than that previously set by the Commission."

In its order of April 20, 1989, the circuit court found in part as follows:

"7. The record clearly reflects that disputes have arisen throughout the pendency of the claim as to the nature of services reasonably required for Richard Griffin's physical and mental care and rehabilitation. The Court finds from the record that Mr. Silberstein admirably and tenaciously withstood and fought off efforts of the insurance carrier that would have dramatically reduced or terminated the amount of medical benefits the [claimant] received prior to the Commission's approval of [claimant's] settlement. Mr. Silberstein through his skills as an attorney and negotiator dramatically increased the medical benefits available to Mr. Griffin, which benefits would have been denied [claimant] or terminated by the insurance carrier if their position would have prevailed. Therefore, this Court finds substantial competent evidence in the record of disputed medical expenses.

8. The sum of $700,000 has been paid to [claimant] for his benefit while the question of attorney fees and expenses for [claimant's] attorney Robert L. Silberstein have been determined by the Commission. It is out of this fund that the [claimant] shall pay the attorney fees and costs ultimately allowed.

9. The Court finds specifically that the settlement approved by the Commission provides solely for the future medical expenses of the [claimant] and not for the funding of [claimant's]

disability, either temporary or permanent, or for reimbursement of wages lost or to be lost."

The court expressly found that "[t]he second settlement agreement provided [claimant] with a more lucrative settlement as a result of Attorney Silberstein's efforts." The court found as well that "[if] the entire $700,000 now paid to [claimant] is not consumed by attorney fees and costs, then a further monetary benefit will be conferred upon [claimant] above and beyond the approved settlement." The court concluded that "the Commission's calculation of 150 hours is against the manifest weight of the evidence and an abuse of discretion since the record clearly reflects substantial services of Mr. Silberstein on a time and result basis far in excess of the 150 hour calculation of the Commission" and that the Commission abused its discretion by issuing an order that gives claimant an additional benefit of $700,000, "being fees not awarded to Attorney Silberstein," but fails to grant counsel "any computational financial benefit for this additional settlement benefit above the settlement amount already approved for [claimant]."

Upon remand, in a decision dated September 22, 1989, the Commission awarded claimant's counsel an additional $5,000 in attorney fees, representing 40 hours at $125 per hour, thereby awarding counsel a total of $47,572.34 for his fee, as opposed to a total of $42,572.34 which it had awarded as attorney fees in its previous decision of January 13, 1989. Upon remand the Commission made virtually all of the same findings with respect to the award of attorney fees that it had made in its order of January 13, 1989. In this decision upon remand, the Commission expanded as follows upon its earlier finding with respect to the absence of records concerning time spent on the case by claimant's counsel:

"It is of upmost importance to note that no records reflecting either the time spent, the dates the time was spent, or the type of legal activities engaged in when time was spent, were placed into evidence by [claimant's] Attorney and it is therefore impossible to determine with any certainty the time expended by [claimant's] attorney in litigation and settlement of this claim. This critical paucity of such germane records is of considerable hinderance [sic] in establishing the amount of fees [claimant's] Attorney is entitled to pursuant to the Circuit Court's order. It should be understood that in the absence of such records it is also impossible to determine whether all services rendered were reasonably necessary. The Commission finds that in no extent is [claimant's] Attorney entitled to fees or expenses for

time, services or costs expended or incurred in support and pursuant to the Petition for Attorneys' fees."

Upon judicial review, in an order entered February 8, 1990, the circuit court found the Commission's order of September 22, 1989, awarding fees of $47,572.34 to be contrary to the order of remand, an abuse of discretion, and against the manifest weight of the evidence. The court found that the Commission's order of September 22, 1989, "has merely awarded Mr. Silberstein nominal attorney fees in disregard of this Court's Mandate of April 20,1989[,] that a substantially higher attorney fee be awarded." The court noted that the only objector to the relief sought by claimant's counsel was the Commission and that the First National Bank of Peoria, as successor guardian of the estate of the incompetent, Richard Griffin, had made no objection to Robert Silberstein's petition for attorney fees. The court found as well that both the nature of counsel's services and their value to the claimant were extraordinary. The court found further that the Commission had made the sum of $700,000 payable to the claimant although the sum is "above and beyond that required for the approved settlement given to Richard F. Griffin, Incompetent, [and] was the direct result of negotiations by Attorney Silberstein and was intended as a fund from which attorney[']s fees would be paid." The circuit court found that income earned on the amount of $700,000 has been received by the claimant and "constitutes an additional benefit accruing to him as a consequence of the services of Attorney Silberstein." The circuit court remanded the cause to the Commission "with directions that Attorney Robert Silberstein be awarded a substantially higher attorney fee consistent with the findings set forth in this order rather than the nominal fee previously set by the Commission."

Thereafter the Commission filed a petition for clarification. In an order entered March 7, 1991, the circuit court found that "under the extraordinary circumstances of this case, the facts contained in the record before the Commission are sufficient to justify this Court's decision herein, that the attorney fee of $700,000, is appropriate." The circuit court ordered that the sum of $700,000 be paid immediately to Robert Silberstein by the guardian of the estate of the claimant and that any and all interest earned upon the sum of $700,000 be retained by the estate of the claimant. This appeal by the Commission and cross-appeal by claimant's counsel followed.

The Commission presents two issues for review: (1) whether the Commission abused its discretion in its two decisions awarding attorney fees of approximately $42,500 and $47,500 to claimant's attorney and (2) whether it was error for the circuit court to award discretion-

ary fees and, if not, whether the $700,000 fee granted was excessive. In his cross-appeal claimant's counsel raises one issue for review: whether interest earned on a fund which is held pending litigation follows the fund upon resolution of the controversy. We have allowed the filing of two briefs by *amici curiae*, one by the Illinois Trial Lawyers Association and the other by the Illinois Manufacturers' Association and the Illinois State Federation of Labor and Congress of Industrial Organizations. Both of these briefs urge, in effect, reversal of the judgment of the circuit court and reinstatement of the Commission's decision.

Section 16 of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.16) (hereafter referred to as the Act) provides in part that "[t]he Commission shall have the power to determine the reasonableness and fix the amount of any fee of compensation charged by any person, including attorneys \*\*\*, for any service performed in connection with this Act, or for which payment is to be made under this Act or rendered in securing any right under this Act." Section 16a (Ill. Rev. Stat. 1989, ch. 48, par. 138.16a) provides with respect to attorney fees in relevant part as follows:

"(A) In the establishment or approval of attorney's fees in relation to claims brought under this Act, the Commission shall be guided by the provisions of this Section and by the legislative intent, hereby declared, to encourage settlement and prompt administrative handling of such claims and thereby reduce expenses to claimants for compensation under this Act.

(B) With respect to any and all proceedings in connection with any initial or original claim under this Act, no claim of any attorney for services rendered in connection with the securing of compensation for an employee or his dependents, whether secured by agreement, order, award or a judgment in any court shall exceed 20% of the amount of compensation recovered and paid, unless further fees shall be allowed to the attorney upon a hearing by the Commission fixing fees, and subject to the other provisions of this Section. However, except as hereinafter provided in this Section, in death cases, total disability cases and partial disability cases, the amount of an attorney's fees shall not exceed 20% of the sum which would be due under this Act for 364 weeks of permanent total disability based upon the employee's average gross weekly wage prior to the date of the accident and subject to the maximum weekly benefits provided in this Act unless further fees shall be al-

lowed to the attorney upon a hearing by the Commission fixing fees.

(C) All attorneys' fees in connection with the initial or original claim for compensation shall be fixed pursuant to a written contract on forms prescribed by the Commission between the attorney and the employee or his dependents, and every attorney, whether the disposition of the original claim is by agreement, settlement, award, judgment or otherwise, shall file his contract with the Chairman of the Commission who shall approve the contract only if it is in accordance with all provisions of this Section.

(D) No attorneys' fees shall be charged with respect to compensation for undisputed medical expenses.

(E) No attorneys' fees shall be charged in connection with any temporary total disability compensation unless the payment of such compensation in a timely manner or in the proper amount is refused, or unless such compensation is terminated by the employer and the payment of such compensation is obtained or reinstated by the efforts of the attorney, whether by agreement, settlement, award or judgment.

(F) In the following cases in which there is no dispute between the parties as to the liability of the respondent to pay compensation in a timely manner or in the proper amount and there is no dispute that the accident has resulted in:
\*\*\*

(2) a statutory permanent disability; \*\*\*
\* \* \*

(5) \*\*\* the legal fees, if any, for services rendered are to be fixed by the Industrial Commission at a nominal amount, not exceeding $100.
\* \* \*

(I) All attorneys' fees for representation of an employee or his dependents shall be only recoverable from compensation actually paid to such employee or dependents.
\*\*\*

(K) After reasonable notice and hearing before the Commission, any attorney found to be in violation of any provision of this Section shall be required to make restitution of any excess fees charged plus interest at a reasonable rate as determined by the Commission."

The decision of the Commission on a question of fact will not be disturbed unless it is contrary to the manifest weight of the evidence.

(*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033.) It is within the province of the Commission to judge the credibility of witnesses, to draw reasonable inferences from their testimony, and to determine what weight the testimony is to be given. (*Paganelis*, 132 Ill. 2d 468, 548 N.E.2d 1033.) We note that appeal of the final order of the circuit court brings the entire record before the reviewing court and permits review of the correctness of the remanding orders (*City of Rockford v. Industrial Comm'n* (1978), 69 Ill. 2d 597, 373 N.E.2d 17).

We have read the entire record on review, which reveals plainly that the findings of the Commission in its initial decision of January 13, 1989, awarding attorney fees to claimant's counsel in the amount of $42,572.34 are not against the manifest weight of the evidence. Claimant's counsel seems to suggest that the settlement consists entirely of disputed medical expenses and that a fee of $700,000 falls within the limits imposed by section 16a because it is 20% of $3,500,000, which was the cost to the insurer to settle the case. However, the record indicates that although the necessity of some aspects of the claimant's care were disputed, many, if not most, of his medical expenses were, in fact, undisputed. The record is such, however, that the amount of claimant's disputed medical expenses cannot be ascertained. Whether the settlement provides solely for the claimant's future medical expenses and not at all for the funding of his disability does not alter the nature of the claimant's case as one involving total disability. In such cases, in section 16a(B) of the Act, the legislature has limited attorney fees to "20% of the sum which would be due under this Act for 364 weeks of permanent total disability based upon the employee's average gross weekly wage prior to the date of the accident and subject to the maximum weekly benefits provided in this Act unless further fees shall be allowed to the attorney upon a hearing by the Commission fixing fees." In this case, upon a hearing the Commission fixed further fees. Nothing in the record suggests that the Commission abused its discretion in fixing a fee of $42,572.34. Although the Commission subsequently awarded claimant's counsel an additional sum of $5,000 in attorney fees, it did so only because it was ordered to increase "substantially" the amount of attorney fees awarded upon remand, in accordance with the erroneous determination by the circuit court that the Commission's decision was against the manifest weight of the evidence and an abuse of discretion. Therefore, the judgment of the circuit court entered on March 7, 1991, is reversed with respect to its award of attorney fees, and the decision of the Commission entered on January 13, 1989, is reinstated.

Our disposition with respect to the award of attorney fees has rendered moot the issue counsel presents in his cross-appeal, and we do not consider it.

Judgment reversed; Commission decision of January 13, 1989, reinstated.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and RAKOWSKI, JJ., concur.