(No. 24902.—

ISABEL PUTTKAMMER, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(GEORGE W. WILLE *et al.* Plaintiffs in Error.)

*Opinion filed April 14, 1939—Rehearing denied June 13, 1939.*

498

WILSON, J., dissenting.

ABRAHAM B. LITOW, for plaintiffs in error.

CHARLES C. SPENCER, and RICHARD M. SPENCER, for defendant in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Isabel Puttkammer made application for an adjustment of compensation and charged that her husband, John Puttkammer, sustained an accidental injury, resulting in death, while he was employed by George W. and Herman H. Wille, coal dealers at Blue Island, Illinois, doing business as Wille Brothers Company. The arbitrator found that the injury did not arise out of his employment and denied compensation. This finding was sustained by the Industrial Commission, on review. The superior court of Cook county set aside the decision of the commission and awarded compensation. The employers' petition for a writ of error was allowed and the case is here for further review.

George W. Wille testified that during the year prior to December 5, 1936, John Puttkammer did anything that needed to be done at the coal yard. Sometimes he drove trucks, sometimes he helped in the yard, and part of the time he ran an excavator or drove a truck for the Independent Paving Company. For work in the yard his wages were $5 per day and for truck driving $6. This witness did not say what number of days Puttkammer worked for Wille Brothers Company. He testified that Puttkammer

received as wages $353.67 from the partnership during the year ending December 5, 1936, the date of his death. From his testimony it appears that Puttkammer began to work at the coal yard in September, 1935, but that he did not work continuously. This witness stated on cross-examination that he thought $36 a week was the amount usually paid in that vicinity for driving a coal truck. He said that there was a wide variation in the wages paid in that vicinity to coal yard laborers and that in some places they received more than $30 a week and in other places only about half that amount.

Isabel Puttkammer testified that her husband brought home $35 a week; that he had no other income than his wages, and that he had worked for Wille Brothers more than a year. The four Puttkammer children were from 2 to 10 years of age.

On December 5, 1936, Puttkammer took his last load of coal to the Shamrock Inn, unloaded it and left the inn about 4:45 o'clock. He was driving north on Halsted street on his way back to the coal yard. When he reached the vicinity of One Hundred Seventy-third street the northbound traffic on Halsted street was obstructed by two automobiles that had been in a collision. He pulled over to the east side of the four-lane highway, stopped his truck and went over to the damaged cars. He picked up an injured child and was walking towards his truck when another north-bound automobile struck one of the damaged cars and knocked it against Puttkammer who was thrown to the street and killed.

We cannot agree that Isabel Puttkammer did not sustain the burden of proving what wages her husband received. She testified as to the amount and that he worked for plaintiffs in error more than a year. It must also be remembered that George W. Wille testified that $36 a week was, in his opinion, the usual amount paid to truck drivers for hauling coal in the vicinity, and that he made no attempt

to state what number of days Puttkammer worked. However, he did testify that $6 a day was the pay for driving the coal truck and $5 a day for yard labor.

Section 10(d) of the Workmen's Compensation act, (Ill. Rev. Stat. 1937, chap. 48, par. 147(d)) provides: "As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation." This provision applies to the case presented by this record. George W. Wille's testimony clearly indicates that Puttkammer hauled coal from time to time throughout a period of fifteen months immediately prior to his death, and that his wages for such work were $6 a day. In computing his annual wages under the act to determine the amount payable as a death benefit to his widow and children, the daily wage is multiplied by 300, in this class of cases, and the result, $1800, is then multiplied by 4, since four times the annual wages of the deceased is the measure of compensation under section 7 of the act. However, subdivision 3 of paragraph (h) of section 7 fixes the maximum at $5500, the amount named in the order of the superior court of Cook county. The contention that Isabel Puttkammer did not sustain the burden of proof imposed on her, as to the earnings of her deceased husband, must be overruled.

The facts are not in dispute and for the most part were stipulated. Plaintiffs in error insist the superior court erred in awarding compensation to the widow and children of Puttkammer and in setting aside the decision of the commission because, they say, that decision was not against the manifest weight of the evidence.

The rule is firmly established by the statute and the decisions that to be compensable the injury resulting in death must have arisen out of and in the course of the deceased workman's employment. Where, as here, the facts are not

in dispute, their legal effect becomes a matter of law, and the rule as to the power of the court to set aside the decision only when it was made against the manifest weight of the evidence has no application. In *Ervin* v. *Industrial Com.* 364 Ill. 56, 64, we said: "The respondent urges that this court is bound by the decision of the Industrial Commission if there is any legal evidence to support it. The rule does not go to the extent stated. The rule is, we are bound by the findings of fact of the Industrial Commission unless such findings are against the manifest weight of the evidence. (*Plano Foundry Co.* v. *Industrial Com.* 356 Ill. 186, 199.) The facts here are not in controversy. The issue as to whether the deceased received injuries which arose out of and in the course of his employment becomes, from the facts stipulated and proved, a question of law. It would scarcely be contended that any question of law decided by the Industrial Commission is binding upon this court." See also, *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, and *Mazursky* v. *Industrial Com.* 364 id. 445.

In the main our Workmen's Compensation act was adopted from that of Great Britain. The decisions of the English courts on subjects included in their act which are also found in our own, are of persuasive authority. (*Armour & Co.* v. *Industrial Board,* 275 Ill. 328.) In *McNeice* v. *Singer Sewing Machine Co. Ltd.,* 1911, S. C. 12, 3 N. C. C. A. 278 n., Lord Kinnear said: "The man had certainly in the course of his employment to traverse this particular road for his employers' purposes, and therefore the dangers and risks of that particular road at the time and on the occasion in question, are, to my mind, incidental to the employment."

In *Martin* v. *John Lovibond and Sons, Ltd.,* K. B. 1914, 5 N. C. C. A. 985, the petitioner's decedent was a drayman who was killed while returning from a public house to his dray, after drinking a glass of beer. He had no business to transact at that public house for his employer. He was

struck by an automobile and killed. It was held that the accident arose out of and in the course of his employment, and the award was sustained. The court said: "I do not think there was any breach of or break in the course of his employment. I shrink from saying that this man who was away from home necessarily for twelve hours was guilty of terminating the course of his employment because he got off his dray for a necessary purpose. He did not linger there. Suppose he had stopped to get the horses some water, could it be said that that was not in the course of his employment? I feel great difficulty in saying that under circumstances like these the driver of a dray is not equally entitled to procure reasonable liquid refreshment for himself, not deviating from the course of his route or lingering in the public house at all, but simply going in and getting a glass of beer as in this case, and returning at once to his dray. I therefore think that there was no breach of the course of his employment, and that the accident did happen in the course of his employment. Then it is said, and with truth, that the accident must arise not merely in the course of but out of his employment and that this man was no more exposed to the risks of being knocked down by a motor car than any other member of the public. I can not assent to that. His duties as a drayman involved his being from eight in the morning until eight at night more or less actually in the streets of London—spending his life in the streets of London. It seems to me to bear the strictest possible analogy to the bicycle case, *Pierce* v. *Provident Clothing and Supply Co.* 1 K. B. 997, 3 N. C. C. A. 279 n., where we held that a man who is exceptionally exposed to street accidents is entitled to claim compensation in respect of such an accident as arising out of his employment, whereas an ordinary member of the public not so exceptionally exposed would not be entitled to claim compensation."

In *Dennis* v. *A. J. White and Co.* 15 N. C. C. A. 294, the House of Lords, speaking through Lord Finlay, L. C., said: "If a servant in the course of his master's business has to

pass along a public street, whether it be on foot or on a bicycle or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment."

In *Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189, we said: "These employees, because of the nature of their business, are compelled to expose themselves to the hazards of the street and to the hazards of automobile and railroad transportation much more than the general public. In the case at bar it was the business of the employer that brought deceased to the place where he was killed, and the work in which he was engaged was just as essential to the operation of the employer's business as the work of the linotype operator or the pressman."

If Puttkammer suffered an injury while driving, or while doing any act in connection with the use of his truck in the street, or any act that can reasonably and fairly be said to be incidental to his employment as a truck driver, his injury and death are compensable. The question is whether he broke the thread or chain of his employment and went outside the course of that employment if, as plaintiffs in error assume from the facts stipulated, he went to aid those injured in the damaged automobiles and collision. Plaintiffs in error say the facts are equally applicable to an intention to give aid or to an intention to see whether his way was clear and that speculation as to what his real intention was cannot be resorted to to determine his purpose. In the view we take it is immaterial whether he went to the damaged cars for the one or for the other purpose. Neither would take him out of the course of his employment. Giving aid to an injured child on the highway is just as natural and is just as much to be expected from a driver of another vehicle as stopping to water horses drawing his dray or stopping to get liquid refreshment for himself.

We held in *Dragovich* v. *Iroquois Iron Co.* 269 Ill. 478, that compensation was payable on account of the death of Frank Markusic although his injuries were sustained while

he was attempting to aid a fellow-workman who was being scalded.

In *Waters* v. *Taylor Co.* 218 N. Y. 248, Waters, an employee of the Taylor Company, went to the rescue of an employee of the Duffy Contracting Company, who was caught by a fall of dirt on the same premises. The *Dragovich case* was cited with approval and its principle was extended to include an employee of one company injured while giving aid to an employee of a different company who was in danger.

In *Yates* v. *Humphrey,* 255 N. W. (Iowa) 639, the employee hurt his hand while he was helping a truck driver get his truck and trailer up to a cinder pile on the employer's premises. This driver was not employed by the injured man's employer. It was shown that it was customary for employees to render assistance in such a case. The only advantage to the employer that was shown in the case, was that, by hauling the cinders away, the man with the truck saved the employer the expense of their removal. It was held that the injured employee was entitled to compensation and that his injury arose out of and in the course of his employment.

In *Babington* v. *The Yellow Taxi Corp.* 250 N. Y. 14, Judge Cardozo said: "The horse has yielded to the motor car as an instrument of pursuit and flight. The ancient ordinances abide as interpreter of present duty. Still, as in the days of Edward I, the citizenry may be called upon to enforce the justice of the State, not faintly and with lagging steps, but honestly and bravely and with whatever instruments and facilities are convenient and at hand. The incorporeal being, the Yellow Taxi Corporation, would have been bound to respond in that spirit to the summons of the officer if it had been sitting in the driver's seat. In sending Babington upon the highway, it knew, or is chargeable with knowledge, that man and car alike would have to answer to the call. An officer may not pause to parley about the

ownership of a vehicle in the possession of another when there is need of hot pursuit. In so far as the danger of pursuit was a danger incidental to the management of the car, it was one of the risks of the employment, an incident of the service, foreseeable, if not foreseen and so covered by the statute.—*Waters* v. *Taylor Co.*, 218 N. Y. 248."

These decisions indicate that there is no break in the employment where the thing done was natural and foreseeable. Whether Puttkammer went to see whether he could pass the damaged automobiles safely or to lend aid to the injured child he was carrying when struck and killed, both acts were foreseeable and it is immaterial whether they were foreseen or not. His injury and death arose out of and in the course of his employment. The order of the superior court of Cook county is right, and it is affirmed.

*Order affirmed.*

Mr. Justice Wilson, dissenting.