(No. 48281.－

SCHEFFLER GREENHOUSES, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Rebecca Ann Greene, Appellee.)

*Opinion filed April 5, 1977.*

362

John R. Rafferty, of Chicago, for appellant.

Slovacek & Galliani, of Chicago (William R. Galliani, and Philip J. McGuire, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Claimant, Rebecca Ann Greene, filed an application for adjustment of claim with the Industrial Commission, seeking compensation from her employer, Scheffler Greenhouses, Inc. The arbitrator made an award, finding that the claimant's injuries did arise out of and in the course of her employment. The Commission affirmed, and on *certiorari* the circuit court of Cook County confirmed the order of the Commission. Respondent, Scheffler Greenhouses, Inc., has appealed to this court.

Respondent is engaged in the florist and nursery business. It employs students part time during the school year and full time during the summer months to work in and around the greenhouses. Claimant and a school friend, Sandy Bachorski, were hired by the respondent in Febru-

ary of 1973, as part-time greenhouse workers. Later that spring, the claimant was informed that, starting June 13, 1973, she could begin working full time during the summer months. Claimant's duties consisted of planting flowers, potting plants, and other types of greenhouse work. Much of her work was performed inside sheds and buildings where at times it became very hot and humid.

A few years prior to 1973, Albert Scheffler, the president of the respondent corporation, gave Joseph Carroll, a full-time employee who rented a house on the greenhouse premises, permission to build and maintain an above-the-ground swimming pool. A 12-foot by 25-foot pool, which stood 4 feet off the ground, was placed between two greenhouses behind the florist shop. One side of the pool was approximately 18 inches from the wall of one greenhouse. A 12-inch-wide plank along the side of the pool was used as a deck for entering and leaving the pool. Approximately 3 feet above this plank was a 12-inch-wide gutter attached to the roof of the greenhouse next to the pool. There were no chairs, benches, or tables around the pool, and the plank along side the pool was allegedly too narrow for persons to rest upon.

On the morning of June 13, the claimant arrived at work at 8 a.m. and was assigned to the potting shed. After working all morning in the shed where it had been hot and muggy, claimant and a co-worker, Sally Ahl Cappiello, broke for lunch, rode their bikes to a nearby hamburger stand, and brought their lunches back to the premises. Employees were permitted to eat their lunches on or off the premises, but were not permitted to eat inside the florist shop. The girls ate their lunches at poolside and then decided to cool off in the pool before returning to work. Claimant, who was 5 feet 4 inches tall, climbed out of the pool and onto the plank. As there were no chairs or benches in the vicinity, and the plank was too narrow to lie on, claimant sat on the gutter overhanging the greenhouse roof. As she leaned back onto the roof to

sunbathe, the glass-platted roof broke, and she sustained lacerations to her left leg.

At arbitration, the claimant testified that, during her interview in February, Scheffler informed her and her friend, Sandy Bachorski, that a swimming pool was located on the greenhouse premises, and that it could be used by employees during their work breaks on muggy summer days. Claimant also testified that she had discussed the use of the pool with Scheffler during a conversation several weeks previous to her working full time.

Respondent then called Scheffler, who testified that he could not recall ever having had a conversation with claimant concerning the use of the pool, and that he had never given any employee permission to use the pool. He did admit, however, that at times employees would ask him if it was alright to ask Joe Carroll if they could use the pool, and that he would say "Okay," as long as the employees had finished their jobs.

Sandy Bachorski testified that Scheffler had told her and claimant at the interview in February that the pool could be used on hot, muggy days during lunch hour. Sally Ahl Cappiello testified that one day during May, while she was working in the greenhouse, Scheffler walked by checking on the employees. Sally informed Scheffler that she felt ill due to the heat, and Scheffler reportedly told her that, if she wanted to, he did not mind if she took a dip in the pool and then returned to work. Sally stated that she did not accept Scheffler's offer because she did not have a swimming suit with her but, after that conversation, she wore a bathing suit under her clothes for the next two or three weeks.

Respondent recalled Scheffler to the stand following .Bachorski's and. Cappiello's testimony. Scheffler did not recall the conversation with Capiello, but denied he told Bachorski that there was a pool on the property and that she could use it on hot days.

Joe Carroll testified, on behalf of the respondent, that

he owned the pool and that he permitted other people, including the respondent's employees, to use the pool if he thought they could swim. None of the girls had asked his permission to use the pool on the day of the accident. He had, however, permitted Scheffler's employees to use the pool on previous occasions during their lunch hour. Carroll had worked for respondent for 30 years and thought Scheffler knew his employees were using the pool. After the accident, Scheffler told Carroll not to let anyone use the pool unless Carroll knew they were qualified. Scheffler's employees continued to use the pool after the accident.

Initially, the respondent argues that the only issue presented is one of law to be determined by this court. A question, of law, however, is presented only where no factual matters are disputed or where no conflicting inferences can be drawn from the facts. (*Newgard v. Industrial Com.* (1974), 58 Ill. 2d 164, 170; *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 275.) Respondent's contention must, therefore, be rejected, as conflicting inferences do exist, and some factual matters are disputed.

The issue presented, then, involves the Commission's finding that the claimant's injury arose out of and in the course of her employment, and whether these findings are against the manifest weight of the evidence.

The dual requirements for compensability under the Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.2) have been defined many times by this court. An injury " 'arises out of' one's employment if its origin is in some risk connected with or incident to the employment, so that there is a causal connection between the employment and the accidental injury." (*Jewel Companies, Inc. v. Industrial Com.* (1974), 57 Ill. 2d 38, 40.) The phrase "in the course of" relates to the time, place, and circumstances of the injury. (*Fire King Oil Co. v.*

*Industrial Com.* (1976), 62 Ill. 2d 293, 294.) An injury is received in the course of employment where it occurs within a period of employment, at a place where the worker may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto. *Wise v. Industrial Com.* (1973), 54 Ill. 2d 138, 142; *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 278.

The record clearly supports the Commission's finding that the injury arose out of the claimant's employment. There was evidence that the work environment was very hot and muggy; that the employer had told the claimant and others that the pool could be used as a source of relief on hot summer days; and that on at least one occasion the employer encouraged the use of the pool by an employee who felt ill due to the heat. Although the employer could not recall the conversation with the claimant, he did admit that, on occasion, he permitted employees to ask the pool's owner if they could use the pool. The pool's owner, Carroll, testified that he permitted the employees to use the pool during off time as long as they could swim. From this evidence (*i.e.,* the authorized existence of the pool on respondent's premises and its permitted use by the employees as a source of relief), the Commission could have found that the use of the pool was a benefit to the respondent and incidental to the employees' employment. The Commission could have then reasonably inferred that a causative factor of the injury was the hot, humid work environment which necessitated the use of the pool and its surroundings and thereby exposed claimant to a risk to which she would not have been exposed apart from her work environment.

It is not enough, however, that the injury arise out of claimant's employment, for it must also occur within the course of her employment. (*Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 275.) Since the Commission

could have reasonably found the claimant's use of the pool authorized, it follows that it could similarly have found that the claimant, at the time of injury, was engaged in activity incidental to her work.

Respondent argues, however, that not only must the employee be engaged in an activity incidental to her employment, but she must also conduct herself in a reasonable manner. The notion that an employee might deviate from the course of his or her employment while engaged in an activity incidental thereto was recognized in *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 277, wherein it was stated that "incidental, or nonessential acts of the employment, such as seeking personal comfort, may not be within the course of employment if done in an unusual, unreasonable, or unexpected manner." Thus, the issue here presented is whether the claimant's act was so unreasonable or unexpected that it constituted a departure from her course of employment.

Respondent, taking the position that claimant's conduct was totally unreasonable and unexpected, cites three decisions wherein the court has denied recovery because of the unreasonableness of the employees' acts. *Roberts & Oake v. Industrial Com.* (1942), 378 Ill. 612; *Vincennes Bridge Co. v. Industrial Com.* (1933), 351 Ill. 444; *White Star Motor Coach Lines v. Industrial Com.* (1929), 336 Ill. 117.

All of these cases, however, are distinguishable from the case at bar, for in none of those cases had the employer placed the employee in a position where it might reasonably be expected that the employee would undertake the danger incurred. In *Roberts & Oake,* for example, the employee was killed during his lunch hour when he fell during an attempt to jump onto the running board of a moving truck. The court denied compensation, finding that the employee had voluntarily undertaken a risk with which his employer had no connection. (378 Ill. 612, 616.) The *Vincennes Bridge Co.* case presented a situation

where an employee was injured when, during his noon hour, he climbed onto a steam engine owned by his employer. The court, again, denied compensation finding that the employee's job did not expose him to the danger he encountered, but that the employee exposed himself to an unnecessary danger entirely separate from the activities of his employment. (351 Ill. 444, 450.) In *White Star Motor Coach Lines,* the employee had returned to the employer's bus garage early one morning after having had mechanical problems with a bus during the night before. Tired from his ordeal, the employee and a companion climbed into a bus in the closed garage, turned on the engine, fell asleep, and were asphyxiated. The court held the act unreasonable in light of the fact that other facilities were available to the employee, including the garage office, which was equipped with chairs and heating facilities. 336 Ill. 117, 124.

When the employer has placed or permitted an employee to be placed in a position where it might reasonably be expected the employee would encounter and undertake a hazard, the court has granted recovery. In *Mt. Olive & Staunton Coal Co. v. Industrial Com.* (1934), 355 Ill. 222, the employer located a lunchroom shack on the other side of a set of railroad tracks, away from the employees' place of work. He thereby placed the employees in a position where it was reasonable to expect them to encounter and undertake an added risk. An employee was injured when, in returning to work, he attempted to climb between the cars of a standing train which began to move during his attempt. The court allowed compensation, noting the necessity for crossing the tracks, the fact that the mine whistle had blown to recall employees to work, and the fact that the employees had undertaken such risk on previous occasions. It held that, since the employee had previously climbed between the cars of a standing train to get to the other side, it was not unreasonable for him to think he could do it again

without endangering himself. Given the necessity for crossing the tracks and the lack of alternatives for doing so, the employer had caused the employee to be at a place where it might be expected that he would undertake the dangerous act. Thus, the employee's conduct was reasonably expected and not unreasonable under the circumstances.

In *Union Starch,* the employer, by way of acquiescence, permitted its employees to use a particular rooftop for work breaks. When an employee stepped out onto a different rooftop for fresh air and fell through the roof, the court allowed recovery in view of the custom and practice in which the employer had acquiesced and, thereby, permitted. The court concluded that the Commission could have found the employee's act to be reasonably expected. 56 Ill. 2d 272, 277-78.

In determining whether an employee's act is unreasonable or unexpected, the Commission may consider not only the nature of the employee's act itself, but whether the employer placed or permitted the employee to be placed in a position where, under the circumstances, it might reasonably be expected that the employee would act as he or she did. Here, there is sufficient evidence to indicate that respondent not only acquiesced in the use of the pool but, in fact, invited its use, deriving benefit therefrom. It permitted the pool to be located on the premises in close proximity to the overhanging gutter, and, although it encouraged the pool's use, it did not provide chairs, benches, or other resting facilities around the pool. The respondent thus placed the claimant in circumstances under which there was a reasonable likelihood that she might seek out the gutter as a spot to rest and sunbathe. We believe that, under these circumstances, the Commission could have found that claimant acted as might reasonably have been expected, and therefore conclude that the Commission's finding was not against the manifest weight of the evidence.

Though we recognize that claimant may have been negligent in sitting on the gutter and resting on the roof, negligence on the employee's part is not a bar to recovery. *Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556, 563.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*