METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, f/k/a The Metropolitan Sanitary District of Greater Chicago, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Gerald Marshall, Appellee).

First District (Industrial Commission Division)   No. 1—94—2565WC

Opinion filed May 19, 1995.

Michael G. Rosenberg, of Chicago (Paul D. Lindauer, Jr., of counsel), for appellant.

Kenneth B. Gore, Ltd., of Chicago (Mark A. DePaolo and Gerald Marshall, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent employer Metropolitan Water Reclamation District of Greater Chicago, f/k/a Metropolitan Sanitary District of Greater Chicago, appeals from an order of the circuit court of Cook County confirming a decision of the Illinois Industrial Commission (Commission) which awarded claimant $266.68 per week for $3^5/7$ weeks for temporary total disability (TTD) and $240 per week for 100 weeks for permanent partial disability (PPD) to the extent of 20% of the man as a whole, and directed respondent to hold claimant harmless for any claims and demands from medical benefit providers related to the September 2, 1981, accident. (Ill. Rev. Stat. 1991, ch. 48, pars. 138.8(b), (d)(2), (j).) The only issue is whether the claimant's injury arose out of and in the course of his employment with respondent. We affirm.

The facts are undisputed. Claimant, 48 years of age at the time of this incident, was employed by respondent in the position of electrical operator and was working as a lockmaster on September 2, 1981. On that date, claimant was working in a station house controlling the Chicago River locks at the mouth of the Chicago River at its entrance to Lake Michigan. This station house is located away from land on a pier surrounded by water.

It was customary for employees to park their vehicles in a designated parking lot. Although respondent did not own the parking lot, it was aware of and condoned the use of the lot for employee parking. Respondent had secured the lot for its employees by the use of a locking chain at the entrance, as well as an intercom system connecting the parking lot with the station house.

The operation of the station house was a "two-man" job requiring the presence of two employees. On September 2, 1981, while awaiting

his relief man in the station house, claimant heard commotion which was indiscernible over the intercom connected to the parking lot. Because there had been prior acts of violence and vandalism in the parking lot (causing respondent to install the intercom system), the commotion caused claimant to be concerned for the safety of his relief person. As a result, claimant signed himself out of the station house and walked down the pier to the parking lot. Upon his arrival at the lot, claimant heard a scream for help and observed a woman in an outstretched position leaning over a seawall into Lake Michigan. Claimant left the parking lot, entering upon a third party's adjacent premises, and went to the woman and noticed she was attempting to pull from the lake a person who had apparently fallen into the lake. She cried out to claimant for help to pull the man out of the water. Claimant lay down next to the woman, grabbed the man's arm, and they were both able to pull him out of the water on the third attempt.

Claimant thereafter went to his car and sat there for about 10 minutes, for, in his words, he was "totally exhausted" from the exertion. About 10 minutes into his drive home, claimant experienced pains in his chest. The pains increased once he arrived home, and thereafter claimant's wife called the paramedics. Claimant was subsequently diagnosed as having suffered an acute myocardial infarction, which caused serious and permanent damage to his heart.

Before the Commission, claimant has the burden of proving all the elements of his claim by a preponderance of the evidence. (*Parro v. Industrial Comm'n* (1993), 260 Ill. App. 3d 551, 553, 630 N.E.2d 860, 862.) On judicial review, where the Commission has had to resolve questions of fact, the Commission's decision will not be set aside unless it is against the manifest weight of the evidence. (*Hansel & Gretel Day Care Center v. Industrial Comm'n* (1991), 215 Ill. App. 3d 284, 292-93, 574 N.E.2d 1244, 1250.) If, however, the evidence is undisputed, the question may become a question of law, and the appellate court need not defer to the Commission's determination of a question of law. (*Scheffler Greenhouses, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 361, 366, 362 N.E.2d 325, 327; *Puttkammer v. Industrial Comm'n* (1939), 371 Ill. 497, 501, 21 N.E.2d 575, 577.) However, even though the facts are undisputed, a question of fact remains if conflicting inferences may reasonably be drawn from the undisputed facts. (*Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 44, 509 N.E.2d 1005, 1008; *Scheffler*, 66 Ill. 2d at 366, 362 N.E.2d at 327.) The appropriate standard of review in this case is the manifest weight standard.

This "sudden emergency" case is distinguishable from cases in

which the nature of the employee's work requires him to respond to emergency calls and cases in which the employer called the employee out in response to an emergency at work. Nor is this an ordinary parking lot case since (1) the injury did not occur in the parking lot and (2) as a direct result of a hazardous condition on the employer's premises. See *Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 62, 541 N.E.2d 665, 669.

■ "In the course of" employment refers to the time, place, and circumstances under which the accident occurred, while "arise out of" employment means there is a causal connection between the accidental injury and some risk incidental to or connected with the activity an employee must do to fulfill her duties. (*Caterpillar*, 129 Ill. 2d at 57-58, 541 N.E.2d at 667.)

> "Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. (*Howell Tractor & Equipment Co. v. Industrial Comm'n* (1980), 78 Ill. 2d 567, 573[, 403 N.E.2d 215, 217].) A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties." (*Caterpillar*, 129 Ill. 2d at 58, 541 N.E.2d at 667.)

"[A]n injury is not compensable unless it is causally connected to the employment." *Caterpillar*, 129 Ill. 2d at 62, 541 N.E.2d at 669.

■ Respondent initially argues that the claimant was not in the course of his employment because (1) he was not on the employer's time and (2) he was not in the employer's place of business.

> "An injury is received in the course of employment where it occurs within a period of employment, at a place where the worker may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto." (*Scheffler*, 66 Ill. 2d at 367, 362 N.E.2d at 327.)

The term "employment" contemplates not only actual work time, but a reasonable time before commencing and after concluding actual employment. (*Caterpillar*, 129 Ill. 2d at 57, 541 N.E.2d at 667; *Panagos v. Industrial Comm'n* (1988), 171 Ill. App. 3d 12, 15, 524 N.E.2d 1018, 1020.) In addition, respondent concedes merely signing out is not a cutoff of the employment nexus. Here, claimant had signed out, but was not supposed to leave until his replacement arrived. After hearing a commotion in the parking lot, claimant went there to make sure his replacement was not in danger. At that point, claimant was still on the respondent's time and premises. Once in the parking lot, claimant heard a woman's call for help and proceeded to the adjacent

property in response to the "sudden emergency" to rescue a stranger. Giving aid as claimant did is natural and expected and did not remove him from the course of his employment. See *Puttkammer*, 371 Ill. at 503, 21 N.E.2d at 578.

Respondent also argues there is no causal connection between the employment and the accident. The claimant had not deviated from his employment prior to the call for help, and the emergency situation was not one of his own making. The response to the emergency situation could reasonably be determined not to be a personal deviation. (See 1A A. Larson, Workmen's Compensation § 28.12 (1994).) Nor is there evidence of a risk personal to claimant, since the undisputed facts allow for, and the respondent does not dispute, the inference that the heart attack was precipitated by the rescue. Respondent's place of employment is on the waterfront. The Commission could reasonably find that plaintiff's having to be there for work exposed him to the risk of responding to an emergency to save a person in the water to a greater degree than that to which the general public would be exposed. Moreover, the risks of being injured while rendering assistance to a stranger are not common to the general public since the selfless nature of confronting the hazards of an emergency situation through an affirmative act of humanitarianism is not something that is generally done by all persons. See *Roberts v. Burlington Industries, Inc.* (1987), 86 N.C. App. 126, 136, 356 S.E.2d 794, 800.

Larson discusses the positional risk theory relied on in cases involving rescues of complete strangers. The positional risk theory would in those cases be employed where the job placed the employee in a position to respond to an emergency situation. (1A A. Larson, Workmen's Compensation § 28.23 (1994).) *Brady v. Louis Ruffolo & Sons Construction Co.* (1991), 143 Ill. 2d 542, 552-53, 578 N.E.2d 921, 925-26, discussed the positional risk doctrine in a nonemergency situation and declined to adopt the rule, continuing to require a demonstration that the employment subjected the employee to an increased risk beyond that to which the general public was exposed. (See also *Campbell "66" Express, Inc. v. Industrial Comm'n* (1980), 83 Ill. 2d 353, 355-56, 415 N.E.2d 1043, 1044-45.) However, in the case at bar, the Illinois rule and the positional risk theory would reach a similar result since the claimant was on the employer's premises when he responded to the call for help and the location of the employer's premises increased the risk of being needed in such a rescue.

In *Ace Pest Control, Inc. v. Industrial Comm'n* (1965), 32 Ill. 2d 386, 205 N.E.2d 453, the claimant stopped his truck to assist a stranded motorist near dusk on a day when the temperature was

below freezing. This "good samaritan" act was deemed foreseeable. As a result, the resultant injury was found to arise out of and in the course of employment.

■ Given the location of the place of employment, it was foreseeable that claimant would help rescue someone who was in the lake. The Commission's finding that the accident arose out of and in the course of claimant's employment is not against the manifest weight of the evidence.

> "The rule here stated \*\*\* does not go so far as to say that every rescue of a stranger by an employee is covered; it refers to a rescue the necessity for making which is thrown in claimant's path by the conditions of his employment. When claimant is a flagman at a dangerous crossing, or a worker in an area where construction and excavation are in progress, or a truck driver who is certain to encounter collisions along the highway, it is easy to see the connection between the work and the contact with the emergency." (1A A. Larson, Workmen's Compensation § 28.22, at 5—458 (1994).)

It was claimant's employment which brought him where he was and, in a general sense, caused him to be confronted with the emergency situation he sought to meet. (1A A. Larson, Workmen's Compensation § 28.22, at 5—455 (1994).) In sudden emergency situations, the rationale is employed that it is foreseeable by the employer that the employee, when faced with an emergency situation, would assist.

The order of the circuit court of Cook County confirming the Commission's decision is affirmed.

Affirmed.

RAKOWSKI, COLWELL, HOLDRIDGE, and RARICK, JJ., concur.