GERALD W. MARSHALL, Plaintiff-Appellee, v. METROPOLITAN WATER RECLAMATION DISTRICT RETIREMENT FUND, Defendant-Appellant.

First District (2nd Division)   No. 1—97—3095

Opinion filed July 14, 1998.

68

RAKOWSKI, J., specially concurring.

Frank I. Gaughan, of Kane, Doy & Harrington, Ltd., and Andrew A. Farenga, both of Chicago, for appellant.

Donald S. Rothschild, of Goldstine, Skrodzki, Russian, Nemec & Hoff, Ltd., of Summit, and Mark C. Gross, of Oak Brook, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff sustained heart-related injuries while in the course of his duties for the Metropolitan Water Reclamation District (District). Based on the Industrial Commission's finding that none of plaintiff's injuries resulted in permanent total disability and plaintiff's allegedly late filing of his application for benefits, defendant denied plaintiff duty disability pension benefits. The circuit court on administrative review set aside defendant's denial of benefits, ruling that plaintiff's five-week hospitalization tolled the statutory deadline for filing for benefits; also, that *laches* barred defendant from denying plaintiff benefits where defendant unnecessarily waited more than 13 years after plaintiff filed his application for benefits before making its decision. On appeal, defendant argues that: (1) plaintiff is collaterally estopped from relitigating the issue of whether his current condition of total disability is related to his work with the District; and (2) *laches* was improperly considered a bar against defendant's denial of coverage based on plaintiff's late filing of his application for benefits.

BACKGROUND

On September 2, 1981, while under the employ of the District, plaintiff heard noise coming from the parking area near his work station at the Chicago River locks. Plaintiff investigated the disturbance

and found a woman calling for help to save a drowning man. After several unsuccessful attempts, plaintiff and the woman managed to pull the man from Lake Michigan. Plaintiff experienced chest pains hours later and was taken to a hospital emergency room, where it was determined that plaintiff was suffering a heart attack. Plaintiff was admitted to the hospital's intensive care unit and spent approximately $2^1/2$ weeks in the hospital. Follow-up examinations revealed that plaintiff's heart attack resulted in approximately 30% irreversible loss of heart function.

On September 28, 1981, plaintiff resumed work with the District on a light-duty basis. Plaintiff continued working until February 11, 1982, when he suffered an angina attack after receiving the results of a civil service test. Plaintiff missed approximately $1^1/2$ weeks of work as a result of the angina attack, but he returned to work thereafter. Plaintiff worked through April 30, 1982, at which time he was hospitalized for blood clotting in his legs. Plaintiff's physician determined that the clotting was caused by the inability of plaintiff's weakened heart to circulate blood forcefully enough. Although plaintiff's anti-clotting medication improved his condition, it was subsequently determined that standing or sitting exacerbated plaintiff's clotting problem. Plaintiff did not return to work after April 30, 1982, and he was hospitalized in excess of five weeks during the months of May, June, and July 1982. Plaintiff was eventually deemed disabled in a medical opinion written by plaintiff's physician on July 18, 1986.

During the course of his employment with the District, plaintiff filed claims for workers' compensation for each of his three injuries. Following the District's denials of plaintiff's claims and the resulting arbitration hearings in each case, the Industrial Commission concluded that plaintiff's heart attack incident of September 2, 1982, was work-related and awarded plaintiff temporary total disability compensation and permanent partial disability compensation. The District appealed this decision to the circuit court on administrative review and the Illinois Appellate Court, both of which upheld the award of the Industrial Commission. *Metropolitan Water Reclamation District of Greater Chicago v. Industrial Comm'n*, 272 Ill. App. 3d 732, 650 N.E.2d 671 (1995). With respect to plaintiff's angina attack of February 11, 1982, the Industrial Commission granted plaintiff temporary total disability compensation, but no compensation for permanent disability. Plaintiff's third claim for workers' compensation based upon blood clotting in his legs was dismissed on plaintiff's own motion.

In addition to his workers' compensation claims, plaintiff filed an application for duty disability pension benefits with defendant on August 23, 1982. Defendant chose not to make a determination as to

plaintiff's application for duty disability pension benefits until a final decision had been made by the courts with respect to plaintiff's workers' compensation claims. After the Illinois Appellate Court affirmed plaintiff's initial workers' compensation award, defendant finally conducted its administrative hearing with respect to plaintiff's claim for duty disability benefits. This hearing occurred on January 31, 1996, well over 13 years after plaintiff had filed his application for such benefits. Defendant ultimately determined that plaintiff was not entitled to duty disability benefits, reasoning that plaintiff's application had been untimely filed, that plaintiff had already received unrelated compensation for his injuries, and that plaintiff's blood-clotting condition, by virtue of not being work-related, precluded him from receiving duty disability benefits.

Plaintiff subsequently petitioned the circuit court for administrative review of defendant's denial. On review, the circuit court set aside defendant's decision on the grounds that the statute of limitations for filing the duty disability application was tolled during the periods in which plaintiff was hospitalized, and that *laches* barred defendant from refusing to pay plaintiff the duty disability benefits for which he had applied. Defendant appeals from that decision.

We reverse and remand with directions.

ANALYSIS

Defendant first contends that plaintiff is collaterally estopped from relitigating the issue of whether his current condition of total disability from work is causally related to his employment with the District. In support of its position, defendant points to the fact that the Industrial Commission did not find that plaintiff was permanently and totally disabled after April 30, 1982, as a result of any of his accidents at work.

■ Generally, collateral estoppel precludes a party from relitigating issues resolved adversely to them in a prior civil proceeding with another party. *In re Owens*, 125 Ill. 2d 390, 397 (1988). The *Owens* court set forth the threshold requirements for collateral estoppel as follows: (1) the issue decided in the prior adjudication is identical with the one presented in the action at bar; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *Owens*, 125 Ill. at 399-400. In addition, the party against whom estoppel is asserted must have had a full opportunity to litigate the issue. *Wolford v. Owens-Corning Fiberglas Corp.*, 176 Ill. App. 3d 312, 314, 530 N.E.2d 721, 722 (1988).

■ Applying the above rules to the case *sub judice*, we note that,

initially, it may seem as though the pivotal issue in plaintiff's prior adjudication before the Industrial Commission is identical to that currently presented by defendant, namely, whether plaintiff is disabled from work as a result of an accident or accidents arising out of his employment with the District. Upon closer inspection, however, we determine that the issue before this court is not identical to that previously adjudicated. The issues before the Industrial Commission in plaintiff's consolidated litigation involved the extent of plaintiff's permanent injuries in the context of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)), whereas plaintiff's petition for duty disability benefits dealt with his injuries in the context of the Illinois Pension Code (40 ILCS 5/11—101 *et seq.* (West 1992)). The importance of this distinction is significant and was aptly treated in the case of *Godare v. Sterling Steel Casting Co.*, 103 Ill. App. 3d 46, 430 N.E.2d 620 (1981).

In *Godare*, this court recognized that different procedures and standards are employed in making workers' compensation and pension determinations. The court stated:

"Procedurally, in a workmen's compensation hearing, medical testimony as well as evidence of the nature of claimant's employment, his age, experience and capabilities are considered by the arbitrator and reviewed by the Industrial Commission[ ] [citation]; whereas, entitlement under the pension agreement is founded exclusively on medical opinions." *Godare*, 103 Ill. App. 3d at 51-52, 430 N.E.2d at 624.

See also *Chicago Park District v. Industrial Comm'n*, 263 Ill. App. 3d 835, 635 N.E.2d 770 (1994) (workers' compensation award of permanent and total disability is based on extent of claimant's injury, nature of employment, age, experience, training, and capabilities); 40 ILCS 5/13—309(b)(2), (b)(3) (West 1992) (duty disability under Pension Code based upon medical evidence alone). Based, in part, upon the foregoing, the court concluded that the issues presented in the workers' compensation and pension proceedings were not identical.

In addition to evidentiary and procedural differences, workers' compensation cases employ different standards than do pension cases. With respect to a claim of permanent and total disability in a workers' compensation matter, for example, the claimant must be able to establish that he or she cannot perform any duties except those that are so limited in quantity, dependability, or quality that there is no reasonably stable market for that claimant. *Interlake, Inc. v. Industrial Comm'n*, 86 Ill. 2d 168, 176 (1981); *Old Ben Coal Co. v. Industrial Comm'n*, 217 Ill. App. 3d 70, 84, 576 N.E.2d 890, 899 (1991). By contrast, the analysis utilized in matters involving the instant duty

disability provision of the Pension Code is based simply upon medical determinations that the claimant is "in a disabled physical condition" and that the claimant has not returned to work or been relieved of his or her disability. 40 ILCS 5/13—309(b), (c) (West 1992).

In light of the aforementioned statutory and case law, our review of the record establishes that the evidence and issues presented before the Industrial Commission in plaintiff's prior litigation differed from those presented before the circuit court in plaintiff's action for duty disability benefits. Moreover, we are of the opinion that, due to the progressive nature of plaintiff's injuries, the evidence presented in the latter action necessarily differed from that considered by the Industrial Commission in 1989. Consequently, neither the new evidence of the nature and extent of plaintiff's injuries nor the underlying issue of plaintiff's current total disability is barred by collateral estoppel in the pension action. Thus, in our view, although the Industrial Commission concluded that plaintiff's work-related injuries were not permanently and totally disabling, its determinations did not foreclose the circuit court in the subsequent pension litigation from receiving and considering updated evidence concerning the permanency of plaintiff's injuries, as such injuries were progressive in nature.

Next, defendant contends that plaintiff's claim for duty disability benefits is barred by the 90-day filing requirement applicable at the time of plaintiff's work-related accidents. Defendant attempts to bolster its contention by arguing that the 90-day deadline constituted a jurisdictional limitation and that equitable considerations, such as *laches*, cannot be applied against that limitation.

■ The statutory subsection applicable at the time plaintiff's injuries occurred provided as follows:

"The [duty disability] benefit shall be allowed only if the following requirements are met by the employee:

(1) Application is made to the [B]oard within 90 days from the date of the *accident*." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 108½, par. 13—157.

However, this provision was amended on January 1, 1992, to provide as follows:

"(b) The [duty disability] benefit shall be allowed only if the following requirements are met by the employee:

(1) Application is made to the Board within 90 days from the date *disability begins*[.]" (Emphasis added.) 40 ILCS 5/13—309(b) (West 1992).

Initially, we recognize the above amendment as being procedural in nature. Our decision is based on well-settled law that, where the legislature amends a statute pending an appeal and where no vested

rights are involved, the suit must be disposed of by the reviewing court under the amended statute. *Bates v. Board of Education, Allendale Community Consolidated School District No. 17*, 136 Ill. 2d 260, 268-69 (1990). Moreover, defendant raised the issue of plaintiff's alleged breach of the 90-day time limit for the first time in its 1996 denial of pension benefits, well after section 13—309(b) was amended. As a result, we conclude that the amended version of section 13—309(b) of the Pension Code applies to the instant case.

■ Defendant, nonetheless, argues that the "date disability begins" is when plaintiff initially sustained his work-related injuries. Defendant asserts that plaintiff's August 23, 1982, filing was at least 23 days beyond the stated deadline, as it did not occur within 90 days of either plaintiff's September 2, 1981, February 11, 1982, or April 30, 1982, accident.

Plaintiff, however, argues that the date of his disability was sometime after April 30, 1982, since he was not aware of his inability to work until later medical determinations. We agree. In our view, the proper interpretation of section 13—309(b) is that the "date disability begins" occurs when it becomes clear to a reasonable claimant that an injury precludes further performance of his or her duties. An instructive case is *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524 (1987). In that case, the Illinois Supreme Court wrote that the date when a progressive injury occurs is the date that injury manifests itself. *Peoria County Belwood Nursing Home*, 115 Ill. 2d at 531. The court further explained that " '[m]anifests itself' means the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." *Peoria County Belwood Nursing Home*, 115 Ill. 2d at 531. The contention that plaintiff's heart problem did not immediately preclude him from working is supported by the fact that he resumed work for the District following his first two heart-related injuries. Therefore, we cannot disagree with plaintiff's contention that his disability became known perhaps weeks after his final injury on April 30, 1982.

While this militates against defendant's argument that plaintiff's disability filing came 23 days after the applicable deadline, we further note that plaintiff underwent hospitalization intermittently for over five weeks between his April 30, 1982, accident and his August 23, 1982, filing. The circuit court upon administrative review ruled that plaintiff's five-week hospitalization acted to toll the 90-day limitations period during that timespan and that plaintiff's filing was, therefore, timely. We find no error in the circuit court's determination, as Illinois law recognizes the doctrine of equitable tolling, which suspends the

running of time in a statute of limitations period for any span of time during which a benefits claimant is disabled. See, *e.g., Ciers v. O.L. Schmidt Barge Lines, Inc.*, 285 Ill. App. 3d 1046, 1052, 675 N.E.2d 210, 214 (1996) (equitable tolling may be appropriate if plaintiff, in some extraordinary way, has been prevented from asserting rights).

■ In addition to holding that plaintiff's application for duty disability benefits was timely filed, the circuit court determined that the doctrine of *laches* barred defendant from denying plaintiff those benefits. Generally, *laches* is an equitable doctrine that precludes recovery by a party whose unreasonable delay in bringing suit prejudices the rights of the opponent. *People ex rel. Daley v. Strayhorn*, 121 Ill. 2d 470, 482 (1988). The determination of whether *laches* applies depends on the facts and circumstances of each case and lies within the sound discretion of the trial judge. *Hannigan v. Hoffmeister*, 240 Ill. App. 3d 1065, 1074, 608 N.E.2d 396, 403 (1992). A trial judge's ruling with respect to *laches* is reviewed under the "abuse of discretion" standard of review. *Hannigan*, 240 Ill. App. 3d at 1074, 608 N.E.2d at 403.

Both parties on appeal make arguments with respect to *laches*. Plaintiff argues that defendant's delay of over 13 years in making its determination as to plaintiff's duty disabilities application was unreasonable. Plaintiff highlights the fact that one of defendant's representatives admitted in testimony that defendant could have made its decision much sooner. Plaintiff further contends that he was prejudiced by such delay in that it prevented him from possibly settling or later filing any or all of his workers' compensation claims and that the passage of such a long period has made it impossible for plaintiff to determine the exact date when he became aware that he was disabled from working for the District. Defendant, however, argues that the 90-day filing deadline in section 13—309(b) constitutes a jurisdictional limitation on plaintiff's claim for duty disability benefits, thus precluding any equitable defense such as *laches.*

■ Although we have already concluded that plaintiff's filing for duty disability benefits did not abridge the 90-day deadline, we, nevertheless, examine defendant's contention that section 13—309(b) is jurisdictional. Defendant relies upon *Eschbaugh v. Industrial Comm'n*, 286 Ill. App. 3d 963, 677 N.E.2d 438 (1996), in support of its position, arguing that section 13—309(b) is not a statute of limitations subject to equitable defenses. Defendant, however, misapplies *Eschbaugh*. Our examination of *Eschbaugh* militates in favor of the opposite conclusion—that the instant filing deadline is, indeed, a nonjurisdictional statute of limitations. The court in *Eschbaugh* discussed the important difference between a jurisdictional and statutory limitations provision,

stating that the former is a condition precedent to a plaintiff's substantive right to seek a remedy, while the latter does not affect a plaintiff's substantive rights but only his or her remedy. *Eschbaugh*, 286 Ill. App. 3d at 964-65, 677 N.E.2d at 440. Accordingly, a statute of limitations constitutes an affirmative defense that is waivable and open to equitable considerations. *Eschbaugh*, 286 Ill. App. 3d at 964-65, 677 N.E.2d at 440. In particular, the court recognized that a statutory provision requiring a claimant to give an employer 45 days' notice of an incident constituted a jurisdictional limitation, whereas a provision declaring a time period for filing an application for workers' compensation benefits was deemed a statute of limitations subject to equitable defenses. *Eschbaugh*, 286 Ill. App. 3d at 965, 677 N.E.2d at 440.

■ Applying the rationale in *Eschbaugh* to the instant case, we conclude that section 13—309(b) of the Pension Code is a statute of limitations. This statutory provision does not create a substantive right but, rather, constitutes language of limitations that can be challenged with equitable defenses. Consequently, plaintiff was not precluded from asserting *laches* against defendant, and section 13—309(b) does not present a jurisdictional bar to the proceedings.

■ Nevertheless, in this particular case, we find error in the court's application of *laches*, which, in effect, precluded any consideration of the evidence considered by defendant. Upon administrative review, the circuit court made the following statement in setting aside defendant's denial of duty disability benefits to plaintiff: "[S]ince the [F]und waited over thirteen years to disqualify Marshall's application, this Court finds that latches [*sic*] bars the [F]und from not repaying him." This was the extent of the circuit court's reasoning in setting aside defendant's decision. Although the determination of whether *laches* applies lies within the sound discretion of the trial court, the trial court must not abuse its discretion. See *Hannigan*, 240 Ill. App. 3d at 1074, 608 N.E.2d at 403. Without stating more, the court concluded that *laches* barred defendant from not paying plaintiff the duty disability benefits for which he applied. In our view, the circuit court's ruling effectively meant that defendant was foreclosed from even raising the issue of whether plaintiff is permanently and totally disabled. In our view, the circuit court erred in applying *laches* to the ultimate issue of whether plaintiff is entitled to duty disability benefits.

Importantly, the circuit court was petitioned to sit in administrative review of the instant case. Therefore, absent *laches*, the circuit court was dutybound to serve as an appellate court in such a case and review defendant's decision under the "manifest weight of the evidence" standard. *Biscan v. Village of Melrose Park Board of Fire & Police Commissioners*, 277 Ill. App. 3d 844, 847, 661 N.E.2d 424, 427

(1996) (sole duty of trial court upon administrative review is to review administrative record to determine whether agency's decision is against manifest weight of the evidence), citing *Polk v. Board of Trustees of the Police Pension Fund*, 253 Ill. App. 3d 525, 536, 624 N.E.2d 1366, 1374 (1993). That is, the circuit court's purpose was to review the evidence that was adduced before defendant in making its determination and to decide whether, based upon that evidence and the law, defendant's denial of duty disability benefits to plaintiff was against the manifest weight of the evidence. See *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998) (in reviewing administrative agency's factual findings, reviewing court does not weigh evidence or substitute its judgment for that of the administrative agency); *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997) (on administrative review, court's function is to determine whether agency's findings and conclusions are against manifest weight of the evidence); *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992) (court's purpose on administrative review is not to reweigh evidence or make an independent determination of the facts).

The record in the instant case does not reveal what, if any, consideration the circuit court gave to the evidence that was considered by defendant in its denial of plaintiff's application. Put differently, the circuit court made no determination as to whether defendant's decision was against the manifest weight of the evidence. Since the circuit court has not fulfilled its duty to serve as an appellate court to review defendant's decision, we reverse and remand the instant case to the circuit court and direct the court to review the evidence, determine whether defendant's denial of duty disability benefits to plaintiff was manifestly erroneous, and enter judgment accordingly.

Reversed and remanded with directions.

McNULTY, P.J., concurs.

JUSTICE RAKOWSKI, specially concurring:
I agree that the doctrine of collateral estoppel does not bar Marshall from claiming that his current condition is causally related to the September 2, 1981, incident. I also agree that the amended version of section 13—309(b) is not jurisdictional. I further agree that *Peoria County Bellwood Nursing Home* is instructive as to when Marshall's alleged disability occurred.

The date of alleged disability, however, is nonetheless a question of fact. Although the majority holds that intermittent hospitalization will

toll the limitations period as a matter of law, no authority is cited for such a proposition. I respectfully submit that none exists. As such, this cause should be remanded to the retirement board to make that determination in accordance with the instructions given in this opinion.

Once that determination is made, the circuit court may analyze both the disability occurrence date and causal connection issues under a manifest weight of the evidence standard.

Finally, although not expressly stated in the opinion, I assume the majority is concluding that the doctrine of *laches* should not apply under the facts of this case. With that, I agree.